[No. S007915. Oct. 11, 1990.]

PASADENA POLICE OFFICERS ASSOCIATION et al., Plaintiffs and Respondents, v.
CITY OF PASADENA et al., Defendants and Appellants.

## COUNSEL

Victor J. Kaleta and Gary L. Gillig, City Attorneys, Martin J. Mayer and Irving Berger for Defendants and Appellants.

Cotkins, Collins & Franscell, Anthony P. Serritella, De Witt W. Clinton, County Counsel (Los Angeles), Lester J. Tolnai and Gordon W. Trask, Deputy County Counsel, Louise H. Renne, City Attorney (San Francisco), Burk E. Delventhal and Mariam M. Morley, Deputy City Attorneys, as Amici Curiae on behalf of Defendants and Appellants.

Green & Shinee, Helen L. Schwab and Richard A. Shinee for Plaintiffs and Respondents

Williams, Kelly, Polverari & Skelton, Richard J. Romanski, Anthony M. Santana, Benjamin C. Sybesma, Teresa M. Snodgrass, Stone & Healey, Michael P. Stone, Mary Ann Healey, Hank Hernandez and Patrick J. Thistle as Amici Curiae on behalf of Plaintiffs and Respondents.

## OPINION

**KENNARD, J.**—To keep the peace and enforce the law, a police department needs the confidence and cooperation of the community it serves. Even if not criminal in nature, acts of a police officer that tend to impair the public's trust in its police department can be harmful to the department's efficiency and morale. Thus, when allegations of officer misconduct are raised, it is essential that the department conduct a prompt, thorough, and fair investigation. Nothing can more swiftly destroy the community's confidence in its police force than its perception that concerns raised about an officer's honesty or integrity will go unheeded or will lead only to a superficial investigation.

This case concerns one important aspect of the procedures governing internal police department investigations into suspected officer misconduct. The narrow issue before us is whether subdivision (f) of Government Code

section 3303[1] manifests a legislative intent to grant preinterrogation discovery rights to a peace officer who is the subject of an internal affairs investigation. After careful consideration of the language and the purpose of the statute, we conclude it does not.

The provision in question appears in the Public Safety Officers Procedural Bill of Rights Act (§ 3300 et seq.; hereafter the Act), which sets forth the basic rights that law enforcement agencies must provide to their peace officer employees. By devoting a substantial portion of the Act to internal affairs investigations, the Legislature has implicitly recognized the importance of such investigations.

The law enforcement agency conducting the investigation into alleged misconduct by an officer employee represents the public interest in maintaining the efficiency and integrity of its police force, which, in enforcing the law, is entrusted with the protection of the community it serves. The officer under investigation, on the other hand, has a personal interest in receiving fair treatment. The procedural protections that the Act affords in this regard reflect the Legislature's balancing of these competing interests. These considerations and our analysis of the statute's language and purpose lead us to conclude that, in allowing an officer under administrative investigation access to reports and complaints, the Legislature intended the right to such access to arise after, rather than before, the officer's interrogation.

## BACKGROUND

This lawsuit arises from a labor dispute between the police department for the City of Pasadena (the Department) and the Pasadena Police Officers Association (PPOA), which is the recognized bargaining agent for the Department's nonsupervisory sworn police personnel. In early 1986, the Department and PPOA were engaged in negotiations intended to produce a memorandum of understanding. Negotiations broke down, and an impasse was declared when the parties could not agree on a wage package.

Shortly thereafter, Officer Robert Ford, PPOA's vice-president, asked Commander Richard Emerson, a divisional supervisor for the Department, for a computer printout of the names and addresses of individuals designated as block captains in the Pasadena Neighborhood Watch program.[2] Ford wanted the list for PPOA so it could send letters to the block captains to solicit their support for the wage package favored by the officers. Because

[1] Unless otherwise indicated, all further statutory references are to the Government Code.
[2] Neighborhood Watch is a program that enlists citizens to assist local police agencies with crime prevention and detection.

the Department used the list solely to administer the Neighborhood Watch program, Emerson considered it confidential, and therefore denied Ford's request.

In May 1986, apparently as the result of information from Officer Ford, the Department learned that Officer Dennis Diaz, PPOA's president, had obtained an "unauthorized" copy of the list. Diaz assertedly used the list to distribute a letter from PPOA to block captains of Neighborhood Watch soliciting their support for PPOA's proposed resolution of the wage dispute.

On May 26, 1986, the Department began an internal affairs investigation into the circumstances surrounding PPOA's use of the list to determine whether there was sufficient cause to charge Officer Diaz with insubordination. In the course of that investigation, Lieutenant Donnie Burwell interviewed Officer Ford. Burwell then notified Diaz to appear on June 5, 1986, for an administrative interrogation. Because Diaz was under investigation and the interrogation might lead to punitive action, Burwell complied with the Act by advising Diaz of the general nature of the investigation. (§ 3303, subd. (c).)

Officer Diaz appeared as scheduled, with counsel. Before Diaz would respond to questioning, however, he demanded to see the notes that Lieutenant Burwell had taken during his interview of Officer Ford. Relying on section 3303, subdivision (f), which allows officers who are subject to interrogation to have access to "reports or complaints made by investigators or other persons," Diaz maintained he did not have to submit to an administrative interrogation until the Department had given him access to its notes of the Ford interview. Based on his understanding of the requirements of subdivision (f) and the Department's policy, Burwell refused to turn over the notes.

Thereafter, Officer Diaz and PPOA filed this lawsuit to enjoin the Department from proceeding with the interrogation of Diaz until it had disclosed to him the notes of the Ford interview. In their complaint, they alleged these grounds for relief: (1) subdivision (f) of section 3303 requires disclosure of reports and complaints to an officer under investigation *before* interrogation; (2) although it had been the Department's practice to provide investigative reports and witness statements to officers before interrogation, it unilaterally changed that practice in this case, thus violating its obligation to "meet and confer in good faith" on a term or condition of employment (§ 3505); and (3) the Department's investigation into the purported misuse of the Neighborhood Watch mailing list constituted statutorily prohibited

interference with, or intimidation of, a public employee engaged in protected labor activity (§§ 3502, 3506).

In opposing the request for an injunction, the Department argued that subdivision (f) of section 3303 required only *postinterrogation* disclosure of reports and complaints. In the alternative, the Department maintained that its notes of the Ford interview were confidential and therefore exempt from disclosure under subdivision (f). The Department also submitted declarations disputing the allegation that it had established a practice of disclosing investigative materials *before* interrogation.

The superior court interpreted subdivision (f) of section 3303 as requiring preinterrogation disclosure of reports and complaints, and issued a preliminary injunction prohibiting the Department from proceeding with the interrogation of Officer Diaz until it had provided him with its notes of the Ford interview.[3] (§ 3309.5, subd. (c).) The Department appealed.

The Court of Appeal affirmed the trial court's order granting the preliminary injunction. It interpreted subdivision (f) of section 3303 as entitling "a public safety officer who is the subject of an internal affairs investigation . . . to copies of nonconfidential reports or complaints . . . prior to being interrogated." It rejected the Department's claim that the notes of the Ford interview were confidential, but it did not define the appropriate standard for determining confidentiality.

## DISCUSSION

### A. *Legislative Intent to Provide for Postinterrogation Disclosure of Reports and Complaints*

██ Courts have long recognized that, while the off-duty conduct of employees is generally of no legal consequence to their employers, the public expects peace officers to be "above suspicion of violation of the very laws [they are] sworn . . . to enforce." (*McCain* v. *Sheridan* (1958) 160 Cal.App.2d 174, 177 [324 P.2d 923]; see also *Cranston* v. *City of Richmond* (1985) 40 Cal.3d 755, 770, fn. 13 [221 Cal.Rptr. 779, 710 P.2d 845]; *Cleu* v.

---

[3] In its statement of decision, the superior court acknowledged that the facts pertaining to past practice were in dispute. Thus it did not decide whether the Department had breached its obligation to meet and confer. And because the Department and PPOA had reached agreement on a "successor" memorandum of understanding before the hearing on the preliminary injunction, the superior court did not address whether the Department had interfered with or intimidated a public employee engaged in protected labor activity, considering that issue to be moot.

*Board of Police Commissioners* (1906) 3 Cal.App. 174, 176 [84 P. 672].) Historically, peace officers have been held to a higher standard than other public employees, in part because they alone are the "guardians of peace and security of the community, and the efficiency of our whole system, designed for the purpose of maintaining law and order, depends upon the extent to which such officers perform their duties and are faithful to the trust reposed in them." (*Christal* v. *Police Commission* (1939) 33 Cal.App.2d 564, 567 [92 P.2d 416].) To maintain the public's confidence in its police force, a law enforcement agency must promptly, thoroughly, and fairly investigate allegations of officer misconduct; if warranted, it must institute disciplinary proceedings.

■ The purpose of the Act is "to maintain stable employer-employee relations and thereby assure effective law enforcement." (*Lybarger* v. *City of Los Angeles* (1985) 40 Cal.3d 822, 826 [221 Cal.Rptr. 529, 710 P.2d 329]; § 3301.) The Act requires that law enforcement agencies throughout the state afford minimum procedural rights to their peace officer[4] employees. (§ 3300 et seq.; *Baggett* v. *Gates* (1982) 32 Cal.3d 128, 135 [185 Cal.Rptr. 232, 649 P.2d 874]; *White* v. *County of Sacramento* (1982) 31 Cal.3d 676, 679 [183 Cal.Rptr. 520, 646 P.2d 191].) Thus the Act secures for peace officers—when off duty and not in uniform—the right to engage, or to refrain from engaging, in political activity (§ 3302); it protects against punitive action or denial of promotion for the exercise of procedural rights granted under its own terms or under an existing grievance procedure (§ 3304, subd. (a)); it provides that no adverse comment be entered in an officer's personnel file until after the officer has been given an opportunity to read and sign the comment (§ 3305); it mandates that when an adverse comment is entered in a personnel file, the officer shall have 30 days to file a written response to be attached to the adverse comment in the file (§ 3306); and it protects against compelled disclosure, except in limited circumstances, of an officer's financial status (§ 3308).

Although notions of fundamental fairness for police officers underlie the Act, a number of its provisions also reflect the Legislature's recognition of the necessity for internal affairs investigations to maintain the efficiency and integrity of the police force serving the community. For instance, while the Act allows administrative searches of an officer's workplace locker or storage space only under certain conditions (§ 3309), the authorization of administrative searches in itself manifests an acknowledgment by the Legislature that such searches are integral to law enforcement employment. This

---

[4]The Act, by its terms, applies only to "peace officers specified in Sections 830.1, 830.2, 830.3, 830.31, 830.32, 830.33, except subdivision (e), 830.34, 830.35, except subdivision (c), 830.36, 830.37, 830.4, and 830.5 of the Penal Code." (§ 3301.)

balancing of two competing interests is also present in section 3303,[5] the statute at issue here.

---

[5]That section provides: "When any public safety officer is under investigation and subjected to interrogation by his commanding officer, or any other member of the employing public safety department, which could lead to punitive action, such interrogation shall be conducted under the following conditions. For the purpose of this chapter, punitive action is defined as any action which may lead to dismissal, demotion, suspension, reduction in salary, written reprimand, or transfer for purposes of punishment.

"(a) The interrogation shall be conducted at a reasonable hour, preferably at a time when the public safety officer is on duty, or during the normal waking hours for the public safety officer, unless the seriousness of the investigation requires otherwise. If such interrogation does occur during off-duty time of the public safety officer being interrogated, the public safety officer shall be compensated for such off-duty time in accordance with regular department procedures, and the public safety officer shall not be released from employment for any work missed.

"(b) The public safety officer under investigation shall be informed prior to such interrogation of the rank, name and command of the officer in charge of the interrogation, the interrogating officers, and all other persons to be present during the interrogation. All questions directed to the public safety officer under interrogation shall be asked by and through no more than two interrogators at one time.

"(c) The public safety officer under investigation shall be informed of the nature of the investigation prior to any interrogation.

"(d) The interrogating session shall be for a reasonable period taking into consideration gravity and complexity of the issue being investigated. The person under interrogation shall be allowed to attend to his own personal physical necessities.

"(e) The public safety officer under interrogation shall not be subjected to offensive language or threatened with punitive action, except that an officer refusing to respond to questions or submit to interrogations shall be informed that failure to answer questions directly related to the investigation or interrogation may result in punitive action. No promise of reward shall be made as an inducement to answering any question. The employer shall not cause the public safety officer under interrogation to be subjected to visits by the press or news media without his express consent nor shall his home address or photograph be given to the press or news media without his express consent.

"(f) The complete interrogation of a public safety officer may be recorded. If a tape recording is made of the interrogation, the public safety officer shall have access to the tape if any further proceedings are contemplated or prior to any further interrogation at a subsequent time. The public safety officer shall be entitled to a transcribed copy of any notes made by a stenographer or to any reports or complaints made by investigators or other persons, except those which are deemed by the investigating agency to be confidential. No notes or reports which are deemed to be confidential may be entered in the officer's personnel file. The public safety officer being interrogated shall have the right to bring his own recording device and record any and all aspects of the interrogation.

"(g) If prior to or during the interrogation of a public safety officer it is deemed that he may be charged with a criminal offense, he shall be immediately informed of his constitutional rights.

"(h) Upon the filing of a formal written statement of charges, or whenever an interrogation focuses on matters which are likely to result in punitive action against any public safety officer, that officer, at his request, shall have the right to be represented by a representative of his choice who may be present at all times during such interrogation. The representative shall not be a person subject to the same investigation. The representative shall not be required to

Section 3303 prescribes protections that apply when a peace officer is interrogated in the course of an administrative investigation that might subject the officer to punitive action, such as "dismissal, demotion, suspension, reduction in salary, written reprimand, or transfer for purposes of punishment." (*Ibid.*) Inherent in this protective scheme is a recognition that such investigations are a necessary component of employment in law enforcement. Indeed, the Act requires officers to comply with administrative interrogations: under section 3303, subdivision (e), refusal to answer questions is a ground for punitive action.

To ensure fair treatment of an officer during an internal affairs interrogation, section 3303 requires that the employing agency notify the officer to be interrogated of the identity of the interrogating officers (§ 3303, subd. (b)), and of "the nature of the investigation prior to any interrogation" (§ 3303, subd. (c)). It also prohibits abusive interrogation techniques. (§ 3303, subds. (a) [interrogation to be conducted at a reasonable hour], (b) [no more than two interrogators], (d) [length of the interrogation session not to be unreasonable; subject must be allowed to attend to physical necessities], and (e) [no abusive language, promises or threats].) If the interrogation focuses on matters likely to result in punitive action against the peace officer, section 3303 allows the officer to designate a representative to be present at the interrogation, provided that the representative is not someone subject to the same investigation. (§ 3303, subd. (h).) ■ If criminal charges are contemplated, section 3303 requires immediate advisement of the so-called *Miranda* rights.[6] (§ 3303, subd. (g); *Lybarger* v. *City of Los Angeles, supra*, 40 Cal.3d 822, 829.) In other words, the officer must be told that although he has a right to remain silent and not incriminate himself, "(1) his silence could be deemed insubordination, leading to administrative discipline, and (2) any statement made under the compulsion of the threat of such discipline could not be used against him in any subsequent criminal proceeding." (*Lybarger* v. *City of Los Angeles, supra*, at p. 829.)

■ In this case, the relevant provision of section 3303 is subdivision (f), which entitles an officer to tape recordings, transcribed notes, and to

---

disclose, nor be subject to any punitive action for refusing to disclose, any information received from the officer under investigation for noncriminal matters.

"This section shall not apply to any interrogation of a public safety officer in the normal course of duty, counseling, instruction, or informal verbal admonishment by, or other routine or unplanned contact with, a supervisor or any other public safety officer, nor shall this section apply to an investigation concerned solely and directly with alleged criminal activities.

"(i) No public safety officer shall be loaned or temporarily reassigned to a location or duty assignment if a sworn member of his department would not normally be sent to that location or would not normally be given that duty assignment under similar circumstances.

[6]*Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974].

reports and complaints made by the investigators or other persons. Subdivision (f) defines only disclosure requirements incident to an *investigation*; it does not address an officer's entitlement to discovery in the event he or she is administratively *charged* with misconduct.

Subdivision (f) of section 3303 provides: "The complete interrogation of a public safety officer may be recorded. If a tape recording is made of the interrogation, the public safety officer shall have access to the tape if any further proceedings are contemplated or prior to any further interrogation at a subsequent time. *The public safety officer shall be entitled* to a transcribed copy of any notes made by a stenographer or *to any reports or complaints made by investigators or other persons, except those which are deemed by the investigating agency to be confidential.* No notes or reports which are deemed to be confidential may be entered in the officer's personnel file. The public safety officer being interrogated shall have the right to bring his own recording device and record any and all aspects of the interrogation." (Italics added.) The statutory language requiring interpretation is the italicized sentence.

Preliminarily, we note that the Act nowhere defines "reports" or "complaints," as used in subdivision (f) of section 3303. ■ When a statute does not define some of its terms, we generally look to "the common knowledge and understanding of members of the particular vocation or profession to which the statute applies" for the meaning of those terms. (*Cranston* v. *City of Richmond, supra*, 40 Cal.3d 755, 765.) ■ Here, however, we need not engage in that task because the Department does not dispute that its notes of the Ford interview are the type of documents subject to disclosure under this provision.

Because subdivision (f) of section 3303 does not specify when an officer's entitlement to the reports and complaints arises, we must determine whether the Legislature intended such disclosure to occur before or after interrogation. ■ To discern legislative intent, we look first to the words of the statute and its provisions, reading them as a whole, keeping in mind the statutory purpose and harmonizing "statutes or statutory sections relating to the same subject . . . both internally and with each other, to the extent possible." (*Dyna-Med, Inc.* v. *Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1386-1387 [241 Cal.Rptr. 67, 743 P.2d 1323].)

■ Subdivision (f) of section 3303 generally provides for *recording* the interrogation of an officer who is under administrative investigation. Although it grants the officer access to tape recordings or transcribed notes of the interrogation "if any further proceedings are contemplated or prior to

any further interrogation at a subsequent time," it does not specify when that access must be given. The recordings and notes memorialize the interrogation. It follows, therefore, that access to them would be after the interrogation. Thus, with respect to *recordings and notes*, subdivision (f) must be read to provide for their production after an interrogation. If we are to harmonize subdivision (f) as a whole, as we must, then the provision should also be interpreted as requiring that, as is the case with recordings and notes, *reports and complaints* be produced after interrogation.

We also note that the Legislature placed the provision regarding disclosure of reports and complaints and the provision specifying entitlement to transcribed notes *in the same sentence* in subdivision (f). That sentence states that the officer "shall be entitled to a transcribed copy of any notes made by a stenographer *or* to any reports or complaints made by investigators or other persons, except those which are deemed by the investigating agency to be confidential." (§ 3303, subd. (f), italics added.) This placement is an additional indication that the Legislature must have intended the discovery rights in each instance to be coextensive, entitling the officer to copies of reports and complaints and transcribed stenographer's notes after the interrogation.

Moreover, in other parts of section 3303 where the Legislature has required that certain acts be performed before interrogation, it manifested that intent by including the words "prior to" in the provision. (§ 3303, subds. (b) ["The public safety officer . . . shall be informed *prior to* such interrogation of the rank, name and command of the officer in charge . . . , the interrogating officers, and all other persons to be present during the interrogation"], (c) ["The public safety officer . . . shall be informed of the nature of the investigation *prior to* any interrogation"] and (g) ["If *prior to* or during the interrogation . . . it is deemed that he may be charged with a criminal offense, he shall be immediately informed of his constitutional rights"], italics added.) But the words "prior to" do not appear in that part of subdivision (f) requiring disclosure of reports and complaints. ■ When the Legislature "has employed a term or phrase in one place and excluded it in another, it should not be implied where excluded." (*Phillips* v. *San Luis Obispo County Dept. etc. Regulation* (1986) 183 Cal.App.3d 372, 379 [228 Cal.Rptr. 101]; see also *People* v. *Drake* (1977) 19 Cal.3d 749, 755 [139 Cal.Rptr. 720, 566 P.2d 622].) ■ Therefore, in this instance, the omission of the words "prior to" is another indicator of legislative intent to provide for production of reports and complaints after interrogation.

As our review of the statutory language has shown, there is nothing in the statute that can be interpreted as indicative of the Legislature's intent to

grant an officer under administrative investigation the right to discovery of reports and complaints before the officer's interrogation. Consideration of the competing interests underlying the Act lends further support for this conclusion, as we shall explain.

■ Protection of peace officers from abusive or arbitrary treatment in their employment is the essence of the Act. To accomplish this, the Legislature set out certain rights and procedures. Some of the rights that the Act affords peace officers resemble those available in a criminal investigation.[7] For example, section 3309 to some extent echoes the Fourth Amendment's prohibition against unreasonable searches and seizures in that it permits searches of an officer's workplace locker or storage space only if conducted under a warrant (see, e.g., U.S. Const., 4th Amend.; Pen. Code, § 1524, subd. (a); *Illinois* v. *Gates* (1983) 462 U.S. 213, 238-239 [76 L.Ed.2d 527, 548-549, 103 S.Ct. 2317]; *United States* v. *Ventresca* (1965) 380 U.S. 102 [13 L.Ed.2d 684, 85 S.Ct. 741]) or with the officer's consent (see, e.g., *United States* v. *Mendenhall* (1980) 446 U.S. 544, 557-558 [64 L.Ed.2d 497, 511-512, 100 S.Ct. 1870]; *United States* v. *Watson* (1976) 423 U.S. 411, 424-425 [46 L.Ed.2d 598, 609-610, 96 S.Ct. 820]). To accommodate the administrative setting, however, the Act also provides that, if the officer is present during a search performed without a warrant or consent, the search is permissible, even though it would not meet Fourth Amendment standards. (§ 3309.) This accommodation suggests a recognition by the Legislature that a law enforcement agency should retain greater latitude when it investigates suspected officer misconduct than would be constitutionally permissible in a criminal investigation. Limitations on the rights of those employed in law enforcement have long been considered "a necessary adjunct to the [employing] department's substantial interest in maintaining discipline, morale and uniformity." (*Kannisto* v. *City and County of San Francisco* (9th Cir. 1976) 541 F.2d 841, 843.) That interest is increased when preservation of public confidence in the trustworthiness and integrity of its police force is at stake.

The presence of subdivision (g) in section 3303 is another indicator that the Legislature looked to criminal procedure as a model for the Act but then provided somewhat reduced protections. For example, similar to the Fifth Amendment's protection against self-incrimination, subdivision (g) requires that if the officer is deemed a criminal suspect, *Miranda* warnings

---

[7] In a letter urging passage of the Act, the Los Angeles Police Protective League, which in this case has filed an amicus curiae brief on behalf of PPOA, explained: "Under [the proposed Act] a policeman will no longer find himself in the contradictory situation of having to enforce the law and protect the rights of others, and yet be denied the same fundamental rights by his own department."

must precede the interrogation even in a noncustodial, administrative setting. (§ 3303, subd. (g); *Lybarger* v. *City of Los Angeles, supra,* 40 Cal.3d 822, 828.) But if no criminal charges are contemplated, a peace officer under administrative interrogation must respond to questioning. (§ 3303, subd. (e); see *Lefkowitz* v. *Turley* (1973) 414 U.S. 70, 84 [38 L.Ed.2d 274, 285, 94 S.Ct. 316].) ■ Thus, an officer under administrative investigation does not have "the right to remain silent free of all sanctions." (*Williams* v. *City of Los Angeles* (1988) 47 Cal.3d 195, 200, fn. 3 [252 Cal.Rptr. 817, 763 P.2d 480].) As we observed in *Lybarger, supra,* at page 827, a peace officer has no absolute right under the Constitution to refuse to answer potentially incriminating questions asked by his or her employer; instead, the officer employee's right against self-incrimination is deemed adequately protected by precluding any use of his or her statements at a subsequent criminal proceeding should such charges be filed.

■ PPOA maintains that subdivision (f) of section 3303 entitles peace officers under administrative investigation to discover reports and complaints in their employer's possession before submitting to interrogation. We disagree. Unlike other protections set forth in the Act, a right to preinterrogation discovery is not essential to the fundamental fairness of an internal affairs investigation. Indeed, the right to discovery *before interrogation and before charges have been filed,* as PPOA seeks here, is without precedent.

For instance, during a criminal investigation a suspect has no right to discovery. In a criminal case, the right to discovery does not arise until charges have been filed and the suspect becomes an accused. (Pen. Code, § 859; *Weatherford* v. *Bursey* (1977) 429 U.S. 545, 559 [51 L.Ed.2d 30, 42, 97 S.Ct. 837] ["no general constitutional right to discovery in a criminal case"]; *Brady* v. *Maryland* (1963) 373 U.S. 83, 87 [10 L.Ed.2d 215, 218, 83 S.Ct. 1194]; *Pitchess* v. *Superior Court* (1974) 11 Cal.3d 531, 535-536 [113 Cal.Rptr. 897, 522 P.2d 305]; see generally, 2 LaFave & Israel, Criminal Procedure (1984) Defense Pretrial Discovery, § 19.3, pp. 481-482; 2 Witkin, Cal. Evidence (3d ed. 1986) Discovery and Production of Evidence, § 1637 et seq., pp. 1578-1607.)

Moreover, granting discovery before interrogation could frustrate the effectiveness of any investigation, whether criminal or administrative. Underlying every administrative inquiry into suspected officer misconduct is the obligation of the law enforcement agency to assure public confidence in the integrity of its officers. The purpose of the inquiry is to determine whether there is any truth to the allegations of misconduct made against an officer and, if so, whether to commence disciplinary proceedings. PPOA's

interpretation of subdivision (f) of section 3303 would impair the reliability of such a determination and the effectiveness of the agency's efforts to police itself.

Disclosure before interrogation might color the recollection of the person to be questioned or lead that person to conform his or her version of an event to that given by witnesses already questioned. Presumably, a related concern led the Legislature to limit an officer's choice of a representative during interrogation to someone who is not a subject of the same investigation. (§ 3303, subd. (h).) That limitation seeks to ensure that participants in the same incident are not privy to evidence provided by other witnesses. Because in this case both Officer Ford and Officer Diaz were involved in the same investigation, under subdivision (h) neither could have designated the other as his representative. Furnishing Officer Diaz *before* his interrogation with the notes of the Ford interview would require the Department to disclose the same type of information that subdivision (h) seeks to shield from exposure.

Furthermore, to require disclosure of crucial information about an ongoing investigation to its subject before interrogation would be contrary to sound investigative practices. During an interrogation, investigators might want to use some of the information they have amassed to aid in eliciting truthful statements from the person they are questioning. Mandatory preinterrogation discovery would deprive investigators of this potentially effective tool and impair the reliability of the investigation. This is true in any interrogation, whether its purpose is to ferret out criminal culpability or, as in this case, to determine if a peace officer used a mailing list in contravention of a direct order by his superiors.

In interpreting subdivision (f) of section 3303, our role is limited to ascertaining legislative intent. Based on our review of the statutory language and the purpose underlying the Act, we conclude that the Legislature intended subdivision (f) to require law enforcement agencies to disclose reports and complaints to an officer under an internal affairs investigation only *after* the officer's interrogation. Because entitlement to *preinterrogation* discovery is neither apparent from the language of subdivision (f) nor fundamental to the fairness of an internal affairs investigation, and because such mandatory discovery might jeopardize public confidence in the efficiency and integrity of its police force, we decline to engraft such a right onto the Act. ▮ Although the statute does not compel preinterrogation discovery, it does not preclude a law enforcement agency from providing such discovery.

B. *Confidentiality*

As an additional ground for its refusal to provide Officer Diaz before his interrogation with its notes of the Ford interview, the Department claimed that the notes were confidential. Subdivision (f) of section 3033 does exempt from disclosure any reports and complaints "deemed by the investigating agency to be confidential." The Department, however, did not assert a statutory basis for confidentiality (e.g., Evid. Code, § 1040; Pen. Code, § 832.7, subd. (a)). Rather, it argued that the notes were "confidential" because their disclosure to Diaz before his interrogation would impair the investigator's ability to evaluate the credibility of Diaz. In view of our conclusion that subdivision (f) does not require disclosure of reports and complaints until after interrogation, we need not address the Department's claim of confidentiality.

C. *Department's Past Practice*

In the trial court, PPOA alleged that the Department had a practice of preinterrogation disclosure, an allegation the Department denies. Other than noting that the relevant facts were in dispute, the superior court did not address this issue; instead, it relied solely on subdivision (f) of section 3033 as its basis for issuing the injunction against the Department. At oral argument before this court, the Department acknowledged that the issue of its past practice remains to be decided in this case.

We need not determine whether the Department did have such a practice and, if so, whether that practice would entitle Officer Diaz to have access to the notes of the Ford interview before the Department's interrogation of him. But because the issue has not yet been resolved in the superior court, the matter is remanded to allow that court to decide whether PPOA is entitled to injunctive relief on that ground.

DISPOSITION

The judgment of the Court of Appeal is reversed with directions to vacate the order of the superior court granting a preliminary injunction and to remand the case to that court for proceedings consistent with this opinion.

Lucas, C. J., Mosk, J., Broussard, J., Eagleson, J., and Arabian, J., concurred.

**PANELLI, J.,** Concurring and Dissenting.—I concur with that portion of the majority opinion that concludes that the matter must be remanded to allow the trial court to decide whether the Pasadena Police Officers Association (PPOA) is entitled to injunctive relief on the ground that the City of Pasadena (City) had a practice of preinterrogation disclosure of reports and complaints. However, I am not in accord with the remainder of the majority's opinion and, accordingly, I respectfully dissent.

In my view, fairness and Government Code section 3303, subdivision (f) (hereafter section 3303(f))[1] entitle an accused officer to preinterrogation disclosure of nonconfidential reports and complaints made by investigators or other persons. Accordingly, I would affirm the judgment of the Court of Appeal.

Section 3303(f) provides that: "The complete interrogation of a public safety officer may be recorded. If a tape recording is made of the interrogation, the public safety officer shall have access to the tape if any further proceedings are contemplated or prior to any further interrogation at a subsequent time. The public safety officer shall be entitled to a transcribed copy of any notes made by a stenographer or to any reports or complaints made by investigators or other persons, except those which are deemed by the investigating agency to be confidential. No notes or reports which are deemed to be confidential may be entered in the officer's personnel file. The public safety officer being interrogated shall have the right to bring his own recording device and record any and all aspects of the interrogation."

My analysis starts from the fundamental premise that the objective of statutory interpretation is to ascertain and effectuate legislative intent. (*People* v. *Woodhead* (1987) 43 Cal.3d 1002, 1007 [239 Cal.Rptr. 656, 741 P.2d 154]; *People* v. *Overstreet* (1986) 42 Cal.3d 891, 895 [231 Cal.Rptr. 213, 726 P.2d 1288]; *People* ex rel. *Younger* v. *Superior Court* (1976) 16 Cal.3d 30, 40 [127 Cal.Rptr. 122, 544 P.2d 1322].) In determining intent, we look first to the language of the statute. (*Tiernan* v. *Trustees of Cal. State University & Colleges* (1982) 33 Cal.3d 211, 218-219 [188 Cal.Rptr. 115, 655 P.2d 317].) When the statutory language is clear and unambiguous, there is no need for statutory construction and the courts should not indulge in it. (*Woodhead, supra,* 43 Cal.3d at pp. 1007-1008; *Overstreet, supra,* 42 Cal.3d at p. 1008.)

Section 3303 sets forth a detailed exposition of the manner and method by which investigations and interrogations are to be conducted. Section

---

[1] All further statutory references are to the Government Code unless otherwise indicated.

3303(f) is primarily concerned with an officer's right to have a record of his or her interrogation and access to nonconfidential documents. The section clearly provides that if a tape recording is made of the proceedings, the officer "shall have access to the tape if any further proceedings are contemplated or prior to any further interrogation at a subsequent time." (*Ibid.*) The statute, however, does not specify the timing of the required disclosure of investigatory notes, reports, statements and complaints in the same language as the provision regarding tape recordings. In my view, the words themselves, therefore, provide no determinative answer as to when these materials are to become available to an officer.

It is a well-recognized principle of statutory construction that every word, phrase and provision employed in a statute is intended to have meaning and to perform a useful function. (*Clements* v. *T. R. Bechtel Co.* (1954) 43 Cal.2d 227, 233 [273 P.2d 5].) Moreover, "[i]nterpretive constructions which render some words surplusage . . . are to be avoided." (*California Mfrs. Assn.* v. *Public Utilities Com.* (1979) 24 Cal.3d 836, 844 [157 Cal.Rptr. 676, 598 P.2d 836].)

As the City points out, there are three contexts in section 3303, apart from section 3303(f), in which the timing of certain conduct and behavior of law enforcement agencies is explicitly set forth.[2] The City argues that had the Legislature intended to entitle a police officer to investigatory materials before the initial interrogation of the officer, it would have expressed that intention in terms as clear and unmistakable as it did in section 3303, subdivisions (b), (c), and (g). This position is accepted by the majority in its opinion.

The City's argument is not without logic, but, as the Court of Appeal noted, a closer examination of section 3303 reveals it is fallacious. For example, section 3303, subdivision (e), provides, inter alia, that ". . . an officer refusing to respond to questions or submit to interrogations shall be informed that failure to answer questions directly related to the investigation or interrogation may result in punitive action." Although there is no explicit requirement that this admonition be given before interrogation, no reasonable person would argue that because of the omission of the words "prior to the termination of the interrogation" the Legislature intended

---

[2]Section 3303, subdivision (b): "The public safety officer under investigation shall be informed *prior* to such interrogation of the rank, name and command of the officer in charge of the interrogation, . . . ." Section 3303, subdivision (c): "The public safety officer under investigation shall be informed of the nature of the investigation *prior* to any interrogation . . . ." Section 3303, subdivision (g): "If *prior to or during* the interrogation of a public safety officer it is deemed that he may be charged with a criminal offense, he shall be *immediately* informed of his constitutional rights." (Italics added.)

such an admonition to be given only after the interrogation has concluded, a time when it would be of no benefit to a suspected officer. Similarly, the Legislature's silence regarding the timing of the disclosure at issue in the instant case does not convincingly indicate a legislative intent to have the disclosure follow the interrogation. On the contrary, it would be most reasonable to assume the legislative silence was attributable to the Legislature's belief that the timing of the disclosure, being a condition to interrogation, was self-evident.

The majority advances its interpretation of section 3303(f) as an attempt to "harmonize" the statutory treatment of "reports and complaints" with that of "recordings and notes." (Maj. opn., *ante*, at pp. 575-576.) The majority relies, however, on the flawed premise that because such recordings and notes memorialize the interrogation, "[i]t follows, therefore, that access to them would be after the interrogation." (Maj. opn., *ante*, at p. 576.) Contrary to the majority's reasoning, it is possible to grant access to recordings and notes as soon as they are made, which certainly might be well before the investigation has concluded. A "harmonious" interpretation that recognizes this fact would require disclosure of reports and complaints at the same time, i.e., at the time they come into the physical possession of the investigators, whether that is before, during or after the investigation has formally concluded.

In sum, I would find that the City has not demonstrated that its reading is the only reasonable interpretation of the statutory language. To discern and effectuate the Legislature's intent we therefore must look to extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part. (*People* v. *Woodhead*, *supra*, 43 Cal.3d at p. 1008; *People* v. *Shirokow* (1980) 26 Cal.3d 301, 306-307 [162 Cal.Rptr. 30, 605 P.2d 859]; *Morse* v. *Municipal Court* (1974) 13 Cal.3d 149 [118 Cal.Rptr. 14, 529 P.2d 46].)

The purpose of the Public Safety Officers Procedural Bill of Rights Act was articulated by the Legislature in section 3301, which provides: "The Legislature hereby finds and declares that the rights and protections provided to peace officers under this chapter constitute a matter of statewide concern. The Legislature further finds and declares that effective law enforcement depends upon the maintenance of stable employer-employee relations, between public safety employees and their employers."

This court has determined that the general purpose of the act was "to secure basic rights and protections to a segment of public employees who

were thought unable to secure them for themselves." (*Baggett* v. *Gates* (1982) 32 Cal.3d 128, 140 [185 Cal.Rptr. 232, 649 P.2d 874].) Specifically, there "can be no doubt that the act is concerned primarily with affording individual police officers certain procedural rights during the course of proceedings which might lead to the imposition of penalties against them, . . ." (*White* v. *City of Sacramento* (1982) 31 Cal.3d 676, 681 [183 Cal.Rptr. 520, 646 P.2d 191].) These procedural protections, which encompass the initial interrogation as well as all subsequent disciplinary proceedings, serve the legislative goal of stable employer-employee relations, for "[e]rroneous action can only foster disharmony, adversely affect discipline and morale in the workplace, and, thus ultimately impair employer-employee relations and the effectiveness of law enforcement services." (*White* v. *City of Sacramento, supra,* 31 Cal.3d at p. 683.)

The majority argues that preinterrogation disclosure of an investigator's notes would compromise the truth-finding process by impairing the reliability of the investigation. I am not persuaded.

While there is no guaranty that an officer under investigation will not attempt to prevaricate, the investigating agency is vested with an array of tools to ferret out the truth. The investigating agency controls the resources to be expended on the investigation, the range of charges to be considered, the timing of various phases (including interrogations), and has the power to order the accused officer to answer questions under the threat of discipline. Section 3303, subdivision (e) provides that an officer who refuses to respond to questions or submit to interrogations is subject to punitive action by his employer. (See *Lybarger* v. *City of Los Angeles* (1985) 40 Cal.3d 822, 827 [221 Cal.Rptr. 529, 710 P.2d 329].)

I believe that preinterrogation disclosure may in fact further the truth-finding purpose of the investigation. Interrogations may take place weeks or months after the alleged misconduct. It is not difficult to envision an officer having trouble remembering the events surrounding the conduct in question. As the Court of Appeal properly noted: "Access to this information may properly refresh an officer's recollection regardless of whether the information is favorable to his position. Rather than impeding the defendant's search for truth, informing a suspected officer of the information provided by others will permit him to meet the charges head on."

The majority argues that only by reading section 3303(f) as entitling an officer to an investigator's notes *after* the interrogation will the proper balance be struck between the interest in reliable investigations and the interest in fairness to officers under investigation. As the legislative history

demonstrates, however, the Legislature itself sought to, and did, strike the balance between the public's interest and the police officer's individual rights by providing police agencies the right to withhold confidential reports and complaints while at the same time giving police officers access to a wide range of nonconfidential documentary evidence.

The first version of Assembly Bill No. 301, 1975-1976 Regular Session, which resulted in the enactment of the Public Safety Officers Procedural Bill of Rights Act, was introduced on December 19, 1974. It did not provide the employing agency with any protection for confidential documents, stating only that: "The public safety officer shall be entitled to a transcribed copy of any notes by a stenographer or to any reports made by investigators." On August 25, 1975, proposed section 3303(f) was amended to provide: "The public safety officer shall be entitled to a transcribed copy of any notes made by a stenographer or to any reports made by investigators, *except those which are deemed by the agency to be confidential. No notes or reports which are deemed to be confidential may be entered into the officer's personnel file.*" (Sen. Amend. to Assem. Bill No. 301 (1975-1976 Reg. Sess.) Aug. 25, 1975, italics added.)

The final amendment to proposed section 3303(f) was made in conference in August of 1976. It maintained the basic structure of the section but expanded the material to which the public safety officer was entitled. Thus the final amendment provided: "The public safety officer shall be entitled to a transcribed copy of any notes made by a stenographer or to any reports or complaints made by investigators or other persons except those which are deemed by the investigating agency to be confidential." (Conference Amend. to Assem. Bill No. 301 (1975-1976 Reg. Sess.) Aug. 12, 1976.)

The amendments during the legislative process reflect the Legislature's express concern with balancing the competing interests implicated by the statute. The public's interest in a well-disciplined police force is protected by allowing a police agency to withhold matter it deems confidential. On the other hand, such matter may not be entered into the officer's personnel file and the officer's procedural rights are protected by entitling him or her to discover a wide range of documentary evidence. I therefore cannot agree with the City's contention that the timing of disclosure is critical to a proper balancing of the competing interests. Nor do I agree that preinterrogation disclosure of an investigator's documents will unduly hamper or burden employing police agencies.

The legislative purpose of the act, which is remedial, and prior case law call for a liberal construction of the rights guaranteed by section 3303(f).

(See *Baggett* v. *Gates, supra,* 32 Cal.3d 128; *Lybarger* v. *City of Los Angeles, supra,* 40 Cal.3d 822; *White* v. *City of Sacramento, supra,* 31 Cal.3d 676.) A statute must be construed "in the context of the entire statutory system of which it is a part, in order to achieve harmony among the parts" (*People* v. *Shirokow, supra,* 26 Cal.3d 301, 307; see also *Moyer* v. *Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230 [110 Cal.Rptr. 144, 514 P.2d 1224]), and any doubt that the Legislature intended a more restrictive reading of section 3303(f) is dispelled by reference to the act as a whole.

The introductory paragraph to section 3303 provides: "When any public safety officer is under investigation and subjected to interrogation . . . which could lead to punitive action, *such interrogation shall be conducted under the following conditions . . . .*" (Italics added.) Following this introductory paragraph, there are nine subparagraphs articulating in considerable detail the conditions under which a public safety officer may be interrogated. Review of the nine subdivisions together with the introductory paragraph reveals that the language specifies what is to occur *before or during* the interrogation of the police officer. One of these, section 3303(f), sets forth that the officer "shall be entitled to" any nonconfidential reports or complaints made by investigators. The interpretation suggested by the City, that a public safety officer is entitled to such reports and complaints only after the interrogation, when it would be of little use to him or her, would make little sense and would be contrary to the structure and the purpose of the section and the act as a whole. Such an incongruous interpretation should be avoided. (*Nunn* v. *State* (1984) 35 Cal.3d 616, 624-625 [200 Cal.Rptr. 440, 677 P.2d 846].)

For the foregoing reasons, I conclude that a police officer is entitled under section 3303(f) to preinterrogation disclosure of nonconfidential reports or complaints made by investigators or other persons.

Accordingly, I would affirm the judgment of the Court of Appeal.