TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

BILL LOCKYER
Attorney General

| | | |
|---|---|---|
| OPINION | : | No. 98-1008 |
| of | : | March 10, 1999 |
| BILL LOCKYER<br>Attorney General | : | |
| ANTHONY M. SUMMERS<br>Deputy Attorney General | : | |

THE HONORABLE HILDA L. SOLIS, MEMBER OF THE CALIFORNIA STATE SENATE, has requested an opinion on the following question:

May a municipal water district impose a standby charge at an increased rate without providing notice to landowners and obtaining voter approval of the charge if the increased rate was specified in a previously adopted engineer's report covering the year in question and was approved by the district's board of directors prior to November 6, 1996?

CONCLUSION

A municipal water district may not impose a standby charge at an increased rate without providing notice to landowners and obtaining voter approval of the charge even if the rate was specified in a previously adopted engineer's report covering the year in question and was approved by the district's board of directors prior to November 6, 1996.

ANALYSIS

Under the Uniform Standby Charge Procedures Act (Gov. Code, §§ 54984-54984.9; "Act"),[1] public agencies may set a water "standby charge" each year for making water available to property "whether the water . . . services are used or not." (§ 54984.2.) We are informed that in July of 1996, a municipal water district (see Wat. Code, §§ 71000-73001), based upon an engineer's report, approved water standby charges for the years 1996 through 2002. The scheduled rate gradually increased from year to year from $5.92 to $29.42.

At the general election of November 5, 1996, the electorate adopted an initiative measure ("Proposition 218"), amending the California Constitution by adding articles XIII C and XIII D. Under article XIII D, new limitations and procedural requirements for assessments on real property were established. Article XIII D provides in relevant part:

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"Sec. 4. Procedures and Requirements for All Assessments. (a) An agency which proposes to levy an assessment shall identify all parcels which will have a special benefit conferred upon them and upon which an assessment will be imposed. The proportionate special benefit derived by each identified parcel shall be determined in relationship to the entirety of the capital cost of a public improvement, the maintenance and operation expenses of a public improvement, or the cost of the property-related service being provided. No assessment shall be imposed on any parcel which exceeds the reasonable cost of the proportional special benefit conferred on that parcel. . . .

"(b) All assessments shall be supported by a detailed engineer's report prepared by a registered professional engineer certified by the State of California.

"(c) The amount of the proposed assessment for each identified parcel shall be calculated and the record owner of each parcel shall be given written notice by mail of the proposed assessment, the total amount thereof chargeable to the entire district, the amount chargeable to the owner's particular parcel, the duration of the payments, the reason for the assessment and the basis upon which the amount of the proposed assessment was calculated, together with

---

[1] All references hereafter to the Government Code are by section number only.

the date, time, and location of a public hearing on the proposed assessment. Each notice shall also include, in a conspicuous place thereon, a summary of the procedures applicable to the completion, return, and tabulation of the ballots required pursuant to subdivision (d), including a disclosure statement that the existence of a majority protest, as defined in subdivision (e), will result in the assessment not being imposed.

"(d) Each notice mailed to owners of identified parcels within the district pursuant to subdivision (c) shall contain a ballot which includes the agency's address for receipt of the ballot once completed by any owner receiving the notice whereby the owner may indicate his or her name, reasonable identification of the parcel, and his or her support or opposition to the proposed assessment.

"(e) The agency shall conduct a public hearing upon the proposed assessment not less than 45 days after mailing the notice of the proposed assessment to record owners of each identified parcel. At the public hearing, the agency shall consider all protests against the proposed assessment and tabulate the ballots. The agency shall not impose an assessment if there is a majority protest. A majority protest exists if, upon the conclusion of the hearing, ballots submitted in opposition to the assessment exceed the ballots submitted in favor of the assessment. In tabulating the ballots, the ballots shall be weighted according to the proportional financial obligation of the affected property.

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

" Sec. 5. Effective Date. Pursuant to subdivision (a) of Section 10 of Article II, the provisions of this article shall become effective the day after the election unless otherwise provided. *Beginning July 1, 1997, all existing, new, or increased assessments shall comply with this article.* Notwithstanding the foregoing, the following assessments existing on the effective date of this article shall be exempt from the procedures and approval process set forth in Section 4:

"(a) Any assessment imposed exclusively to finance the capital costs or maintenance and operation expenses for sidewalks, streets, sewers, *water*, flood control, drainage systems or vector control. *Subsequent increases in such assessments shall be subject to the procedures and approval process set forth in Section 4.*



"...................................................

"(d) Any assessment which previously received majority voter approval from the voters voting in an election on the issue of the assessment. Subsequent increases in those assessments shall be subject to the procedures and approval process set forth in Section 4.

"Sec. 6. Property-Related Fees and Charges. (a) Procedures for New or Increased Fees and Charges. An agency shall follow the procedures pursuant to this section in imposing or increasing any fee or charge as defined pursuant to this article, . . .

"...................................................

"(4) No fee or charge may be imposed for a service unless that service is actually used by, or immediately available to, the owner of the property in question. Fees or charges based on potential or future use of a service are not permitted. *Standby charges, whether characterized as charges or assessments, shall be classified as assessments and shall not be imposed without compliance with Section 4.*

"............................................. .............................."
(Italics added.)

Standby charges imposed by a water district constitute "assessments" within the meaning of article XIII D of the Constitution. (Cal. Const., art. XIII D, § 6, subd. (a)(4); see § 54984.1; *San Marcos Water Dist.* v. *San Marcos Unified School Dist.* (1986) 42 Cal.3d 154, 161.) As such, they are subject to public notice and voter approval requirements beginning July 1, 1997, as "existing, new, or increased assessments" (Cal. Const., art. XIII D, § 5, subd. (a)), except that assessments for water (capital costs, maintenance, and operational expenses) are not covered by such requirements (Cal. Const., art. XIII D, § 5, subd. (a)), unless the assessments include "[s]ubsequent increases" after November 6, 1996 (*ibid.*).

It may be argued here that the increases in the water standby charges in question do not constitute "subsequent increases" because, although each is greater in amount than the prior year's assessment, they were scheduled before the adoption of the constitutional amendment. In other words, the landowners in the district knew what the charges would be over the entire six-year period prior to the adoption of article XIII D. Does

the term "subsequent increases" (Cal. Const., art. XIII D, § 5, subd. (a)) mean that the amounts were not previously approved before November 6, 1996?

The Act requires that any water standby charge be assessed on an annual basis. Section 54984.2 provides:

> "Any local agency which is authorized by law to provide water, sewer, or water and sewer service, and which is providing either or both of those services within its jurisdiction, may fix, before either (a) August 10 of any given year with respect to local agencies the taxes or assessments of which are collected for the local agency by the county or (b) the start of the fiscal year with respect to local agencies the taxes or assessments of which are collected by the local agency, a water or sewer standby charge, or both, on land within the jurisdiction of the local agency to which water, sewer, or water and sewer services are made available for any purpose by the agency, whether the water or sewer services are actually used or not. . . ."

We believe that the term "[s]ubsequent increases" (Cal. Const., art XIII D, § 5, subd. (a)) refers to the legislative action of imposing an assessment as distinguished from simply the continued administrative collection of an existing assessment. (See *McBrearty* v. *City of Brawley* (1997) 59 Cal.App.4th 1441, 1450.) Here, although the amount of each increase was known beforehand by the landowners of the district, the increases could not be levied without subsequent legislative action. (§ 54984.2.) It is the requisite legislative action that triggers the public notice and voter approval requirements of the Constitution when a water standby charge is increased from the previous year.

We find support for our determination in the statutory scheme enacted by the Legislature to implement the new constitutional amendments. In 1997 the Legislature enacted the Proposition 218 Omnibus Implementation Act (§§ 53750-53753.5). In defining what constitutes an "increase" in an assessment, section 53750, subdivision (h) provides:

> "(1) 'Increased,' when applied to a tax, assessment, or property-related fee or charge, means a decision by an agency that does either of the following:
>
> "(A) Increases any applicable rate used to calculate the tax, assessment, fee or charge.
>
> "(B) Revises the methodology by which the tax, assessment, fee or charge is calculated, if that revision results in an increased amount being levied on any person or parcel.

"(2) A tax, fee, or charge is not deemed to be 'increased' by an agency action that does either or both of the following:

"(A) Adjusts the amount of a tax or fee or charge in accordance with a schedule of adjustments, including a clearly defined formula for inflation adjustment that was adopted by the agency prior to November 6, 1996.

"(B) Implements or collects a previously approved tax, or fee or charge, so long as the rate is not increased beyond the level previously approved by the agency, and the methodology previously approved by the agency is not revised so as to result in an increase in the amount being levied on any person or parcel.

"(3) A tax, assessment, fee or charge is not deemed to be 'increased' in the case in which the actual payments from a person or property are higher than would have resulted when the agency approved the tax, assessment, or fee or charge, if those higher payments are attributable to events other than an increased rate or revised methodology, such as a change in the density, intensity, or nature of the use of land."

When a water district proposes to follow a previously adopted schedule of increased rates for standby charges, the upward change from year to year falls within the definition of "increased" found in section 53750, subdivision (h)(1)(A), applicable to all assessments as well as taxes, fees, and charges. The exception in subdivision (h)(2)(A) of the statute for "adjustments" in accordance with a previously adopted schedule is only applicable to taxes, fees, and charges, and not assessments. (See *Pasadena Police Officers Ass'n*. v. *City of Pasadena* (1990) 51 Cal.3d 564, 576 ["When the Legislature 'has employed a term or phrase in one place and excluded it in another, it should not be implied where excluded'"]; *People* v. *Woodhead* (1987) 43 Cal.3d 1002, 1010 [". . . when the drafters of a statute have employed a term in one place and omitted it in another, it should not be inferred where it has been excluded"].) Since water standby charges are treated as assessments for purposes of the constitutional requirements (Cal. Const., art. XIII D, § 6, subd. (a)(4)), they are not covered by the "adjustments" exemption of section 53750 for schedules adopted prior to November 6, 1996.

Accordingly, we conclude that an increase brought about by the annual fixing of a water standby charge requires compliance with the procedural requirements of the Constitution, article XIII D, section 4. Section 53753 implements these constitutional requirements as follows:

"(a) The notice, protest, and hearing requirements imposed by this

section supersede any statutory provisions applicable to the levy of a new or increased assessment that is in existence on the effective date of this section, whether or not that provision is in conflict with this article. Any agency that complies with the notice, protest, and hearing requirements of this section shall not be required to comply with any other statutory notice, protest, and hearing requirements that would otherwise be applicable to the levy of a new increased assessment, with the exception of Division 4.5 (commencing with Section 3100) of the Streets and Highways Code. If the requirements of that division apply to the levy of a new or increased assessment, the levying agency shall comply with the notice, protest, and hearing requirements imposed by this section as well as with the requirements of that division.

"(b) Prior to levying a new or increased assessment, or an existing assessment that is subject to the procedures and approval process set forth in Section 4 of Article XIII D of the California Constitution, an agency shall give notice by mail to the record owner of each identified parcel. Each notice shall include the total amount of the proposed assessment chargeable to the entire district, the amount chargeable to the record owner's parcel, the duration of the payments, the reason for the assessment and the basis upon which the amount of the proposed assessment was calculated, and the date, time, and location of a public hearing on the proposed assessment. Each notice shall also include, in a conspicuous place thereon, a summary of the procedures for the completion, return, and tabulation of the assessment ballots required pursuant to subdivision (c), including a statement that the assessment shall not be imposed if the ballots submitted in opposition to the assessment exceed the ballots submitted in favor of the assessment, with ballots weighted according to the proportional financial obligation of the affected property. An agency shall give notice by mail at least 45 days prior to the date of the public hearing upon the proposed assessment.

"(c) Each notice given pursuant to subdivision (b) shall contain an assessment ballot that includes the agency's address for receipt of the form and a place where the person returning the assessment ballot may indicate his or her name, a reasonable identification of the parcel, and his or her support or opposition to the proposed assessment. Each assessment ballot shall be signed and either mailed or otherwise delivered to the address indicated on the assessment ballot. Regardless of the method of delivery, all assessment ballots shall be received at the address indicated, or the site of the public testimony, in order to be included in the tabulation of a majority protest pursuant to subdivision (e). An assessment ballot may be submitted, changed, or withdrawn prior to the conclusion of the public testimony on the proposed

assessment at the hearing.  An agency may provide an envelope for the return of the assessment ballot.

"(d) At the time, date, and place stated in the notice mailed pursuant to subdivision (b), the agency shall conduct a public hearing upon the proposed assessment. . . ."

At the time it complies with these procedures, a water district may include a schedule that includes a range of assessments or a formula for use in future years.  Subdivision (a) of section 53753.5 states:

"If an agency has complied with the notice, protest, and hearing requirements of Section 53753, . . then those requirements shall not apply in subsequent fiscal years unless the assessment methodology is changed to increase the assessment, or the amount of that assessment is proposed to exceed an assessment formula or range of assessments adopted by an agency in accordance with Article XIII D of the California Constitution or Section 53753."

We conclude that a municipal water district may not impose a standby charge at an increased rate without providing notice to landowners and obtaining voter approval of the charge even if the rate was specified in a previously adopted engineer's report covering the year in question and was approved by the district's board of directors prior to November 6, 1996.

* * * * *