BILL LOCKYER Attorney General ROBERT L. MUKAI Deputy Attorney General
THE HONORABLE RICHARD K. RAINEY, MEMBER OF THE STATE SENATE, has requested an opinion on the following question:
Did the recent amendment of Labor Code section 96, which requires the Labor Commissioner to take assignments of claims for loss of wages as the result of demotion, suspension, or discharge from employment for lawful conduct occurring during non-working hours, abrogate existing law that permits the disciplining of peace officers for off-duty conduct occurring away from their place of employment that is otherwise lawful but conflicts with their duties as peace officers?
 CONCLUSION
The recent amendment of Labor Code section 96, which requires the Labor Commissioner to take assignments of claims for loss of wages as the result of demotion, suspension, or discharge from employment for lawful conduct occurring during non-working hours, did not abrogate existing law that permits the disciplining of peace officers for off-duty conduct occurring away from their place of employment that is otherwise lawful but conflicts with their duties as peace officers.
 ANALYSIS
The Division of Labor Standards Enforcement ("DLSE") of the Department of Industrial Relations (Lab. Code, § 79)[1] is authorized to "enforce the provisions of [the Labor Code] and all labor laws of the state the enforcement of which is not specifically vested in any other officer, board or commission" (§ 95, subd. (a)). The Chief of DLSE is the Labor Commissioner ("Commissioner"). (§ 82, subd. (b).) Among the Commissioner's responsibilities is that of taking assignments of certain categories of employee claims for lost wages and benefits. Section 96 provides:
 "The Labor Commissioner and his or her deputies and representatives authorized by him or her in writing shall, upon the filing of a claim therefor by an employee, or an employee representative authorized in writing by an employee, with the Labor Commissioner, take assignments of:
 "(a) Wage claims and incidental expense accounts and advances.
"(b) Mechanics' and other liens of employees.
 "(c) Claims based on `stop orders' for wages and on bonds for labor.
 "(d) Claims for damages for misrepresentations of conditions of employment.
"(e) Claims for unreturned bond money of employees.
"(f) Claims for penalties for nonpayment of wages.
 "(g) Claims for the return of workers' tools in the illegal possession of another person.
 "(h) Claims for vacation pay, severance pay, or other compensation supplemental to a wage agreement.
 "(i) Awards for workers' compensation benefits in which the Workers' Compensation Appeals Board has found that the employer has failed to secure payment of compensation and where the award remains unpaid more than 10 days after having become final.
 "(j) Claims for loss of wages as the result of discharge from employment for the garnishment of wages.
 "(k) Claims for loss of wages as the result of demotion, suspension, or discharge from employment for lawful conduct occurring during non-working hours away from the employer's premises."
In 1999, subdivision (k) was added to section 96. (Stats. 1999, ch. 692, § 2.) We are asked whether this amendment changed prior law that permitted law enforcement agencies to discipline peace officers for off-duty conduct that was otherwise lawful but in conflict with their duties as peace officers. We conclude that the recent statutory amendment did not abrogate the prior law.
Preliminarily, we note that before subdivision (k) was enacted, peace officers could be disciplined for engaging in lawful activities during non-working hours if such activities were inconsistent with their duties as peace officers. In Pasadena Police Officers Assoc. v. City of Pasadena (1990) 51 Cal.3d 564, 571-572, the Supreme Court observed:
 "Courts have long recognized that, while the off-duty conduct of employees is generally of no legal consequence to their employers, the public expects peace officers to be `above suspicion of violation of the very laws [they are] sworn . . . to enforce.' [Citations.] Historically, peace officers have been held to a higher standard than other public employees, in part because they alone are the `guardians of peace and security of the community, and the efficiency of our whole system, designed for the purpose of maintaining law and order, depends upon the extent to which such officers perform their duties and are faithful to the trust reposed in them.' [Citation.] To maintain the public's confidence in its police force, a law enforcement agency must promptly, thoroughly, and fairly investigate allegations of officer misconduct; if warranted, it must institute disciplinary proceedings."
Accordingly, discipline for lawful off-duty conduct could be imposed if the conduct tended "to impair the public's trust in its police department." (Id., at p. 568.) "Police officers are routinely disciplined for off-duty conduct that is inconsistent with their special obligations." (People v. Owens (1997) 59 Cal.App.4th 798, 803; see Anderson v. State Personnel Board (1987) 194 Cal.App.3d 761, 768; Warren v. State Personnel Board (1979) 94 Cal.App.3d 95, 104, 107; Cleu v. Board of Police Commissioners (1906) 3 Cal.App. 174, 177.)
Do the recently enacted terms of subdivision (k) change this prior law? In analyzing the language of the 1999 amendment of section 96, we may rely upon well-established principles of statutory construction. "When construing a statute, we must `ascertain the intent of the Legislature so as to effectuate the purpose of the law.' [Citation.]" (Wilcox v. Birtwhistle (1999) 21 Cal.4th 627, 646.) "Committee reports are often useful in determining the Legislature's intent. [Citation.]" (California Teachers Assn. v. Governing Bd. of Rialto Unified School Dist. (1977)14 Cal.4th 627, 646.) Finally, "`statutes or statutory sections relative to the same subject must be harmonized, both internally and with each other, to the extent possible. [Citations.]'" (Walnut Creek Manor v. Fair Employment Housing Com. (1991) 54 Cal.3d 245, 248.)
Applying these rules of construction, we find that subdivision (k) was added to section 96 so that the Commissioner could "assert the civil rights otherwise guaranteed by Article I of the California Constitution" for employees "ill-equipped and unduly disadvantaged" to assert such rights. (Stats. 1999, ch. 92, § 1.) Article I of the Constitution establishes numerous civil rights, including liberty of speech and of the press, right to assemble and to petition, and religious freedom.
All the constitutional rights peace officers have now are the same ones they had prior to the 1999 amendment of section 96. As we have observed above, however, these constitutional rights do not prevent peace officers from being disciplined for off-duty incompatible activities. (Pasadena Police Officers Assoc. v. Pasadena, supra, 51 Cal.3d at p. 568, 571-572; People v. Owens, supra, 59 Cal.App.4th at p. 803.) Consequently, the Commissioner has nothing to assert under the terms of section 96 on behalf of peace officers who are disciplined for off-duty incompatible activities. Subdivision (k) was not intended to give the Commissioner such nonexistent responsibilities.
We find support for our determination in the legislative history of the 1999 amendment. No statements may be found in any of the committee reports or other materials to suggest that the amendment was intended to apply with respect to peace officers for their off-duty incompatible activities, or indeed, to affect substantive rights of employees at all. The absence of any such suggestion in the legislative history is unsurprising. Throughout its history, section 96 has not served as an original source of employee rights against employers, but has instead provided a supplemental procedure for asserting employee claims for which the legal basis already existed elsewhere in the law. (See § 96, subds. (a) [claims for wages, incidental expense accounts, and advances — ordinarily founded in collective bargaining agreements or contracts of employment], (b) [mechanics' and other employees' liens — Civ. Code, §§ 3110-3154], (c) [stop notices — Civ. Code, §§ 3156-3176.5, 3179-3214], (d) [misrepresentation of conditions of employment — Kittle v. Lang (1951) 107 Cal.App.2d 604, 606-607, 611], (e) [unreturned employee bond money — § 404, subd.(b)], (f) [penalties for nonpayment of wages — §§ 203, 210, 225.5], (g) [return of tools — Connell v. Higgins (1915) 170 Cal. 541], (h) [vacation and severance pay, supplemental compensation — Suastez v. Plastic Dress-Up Co. (1982) 31 Cal.3d 774, 780-781], (i) [delayed payment of compensation benefit awards — § 5814], (j) [wage garnishment discharge — 15 U.S.C. § 328(b)(2); § 2929, subd. (b).]) The absence of any indication of legislative intent to affect existing rights of employees through enactment of subdivision (k) is consistent with the primary function of section 96 to supply an additional means of enforcement of rights already established elsewhere, and buttresses the conclusion that the Legislature did not intend to change the substantive law when it added subdivision (k).
Our determination also prevents possible conflicts between the provisions of section 96 and other statutory provisions. Under Government Code section 19572, subdivision (t), a state employee may be disciplined for a "failure of good behavior either during or outside of duty hours which is of such a nature that it causes discredit to the appointing authority or the person's employment." A state employee may also be disciplined under the terms of Government Code section19990 for engaging "in any . . . activity . . . which is clearly inconsistent, incompatible, in conflict with, or inimical to his or her duties as a state . . . employee." Pursuant to Government Code section1126, a local agency employee may be disciplined for engaging in activities that are "inconsistent, incompatible, in conflict with or inimical to his or her duties. . . ."
Additionally, our determination avoids a possible conflict between section 96 and the Constitution. The State Personnel Board is charged with administering the state civil service system, including the duty to "review disciplinary actions." (Cal. Const., art. VII, § 3, subd. (a).) The Legislature is, of course, aware that it may not enact laws that would undermine the State Personnel Board's constitutional duties and responsibilities. (See Pacific Legal Foundation v. Brown (1981)29 Cal.3d 168, 181.)
In summary, the 1999 amendment of section 96 did not create new substantive rights for employees. Rather, it established a procedural mechanism that allows the Commissioner to assert, on behalf of employees, their independently recognized constitutional rights. (See Resnik v. Anderson Miles (1980) 109 Cal.App.3d 569, 572; Marc Bellaire, Inc. v. Fleischman (1960) 185 Cal.App.2d 591, 595-596.) As we have seen, however, the constitutional rights of peace officers do not prevent them from being disciplined for engaging in activities during non-working hours that are otherwise lawful but "impair the public's trust in its police department." (Pasadena Police Officers Assoc. v. City of Pasadena, supra, 51 Cal.3d at p. 568.)
In answer to the question presented, therefore, we conclude that the recent amendment of section 96, which requires the Commissioner to take assignments of claims for loss of wages as the result of demotion, suspension, or discharge from employment for lawful conduct occurring during non-working hours, did not abrogate existing law that permits the disciplining of peace officers for off-duty conduct occurring away from the place of employment that is otherwise lawful but conflicts with their duties as peace officers.
[1] Unspecified section references hereafter are to the Labor Code.