[No. G028834. Fourth Dist., Div. Three. Dec. 20, 2004.]

BEVERLY HINRICHS, Plaintiff and Appellant, v.
COUNTY OF ORANGE et al., Defendants and Respondents.

## COUNSEL

Law Offices of James Michael Dorn, James Michael Dorn and Larry J. Roberts for Plaintiff and Appellant.

Lewis, D'Amato, Brisbois & Bisgaard, Lewis Brisbois Bisgaard & Smith, Nancy E. Zeltzer and Thomas W. Tuttle for Defendants and Respondents.

## OPINION

**BEDSWORTH, Acting P. J.**—Beverly Hinrichs, an officer in the Orange County Sheriff's Department (the Department), appeals from the denial of her petition for a writ of mandate challenging discipline imposed upon her by the Department. Hinrichs's petition challenged, on both procedural and substantive grounds, the Department's decision to issue a written reprimand to her for violation of its use-of-alcohol regulation. The trial court concluded Hinrichs's substantive challenge to the discipline imposed was not ripe, as

she was still in the process of exhausting her administrative appeals, and rejected her procedural challenges. We conclude the trial court erred and the order must be reversed.

Government Code section 3303, subdivision (g) specifies the procedural rights to be accorded an officer in these circumstances. Among other things, Hinrichs was entitled to discovery of any nonconfidential reports or other documents created and collected by the Department in the course of investigating her alleged misconduct. The Department failed to comply with that requirement, and we cannot say the failure was harmless procedural error under the circumstances.

Moreover, although we reject Hinrichs's contention that the "Use of Alcohol" regulation which she was accused of violating impermissibly shifted the burden of proof to her, we have other concerns about the manner in which her discipline was imposed. Should the Department elect to continue the disciplinary process against Hinrichs after the writ of mandate issues, those concerns should be addressed in the further proceedings.

Hinrichs is a full-time special officer in the Department. On November 5, 1999, at approximately 10:00 p.m., she reported to work at the Inmate Reception Center of the jail facility in Santa Ana. Sergeant Brian Schmutz, Hinrichs's supervisor, held the door for her as she entered the building. Approximately an hour later, she was directed to see Schmutz in the watch commander's office.

When Hinrichs arrived at the watch commander's office, Schmutz was there along with Sergeant S. Taylor. Schmutz informed Hinrichs that he had smelled the odor of alcohol on her breath when she entered the building, and asked if she had been drinking. She replied that she had consumed two beers with her lunch, approximately 10 hours earlier. She also explained that she had been sick for the two previous nights and had been taking Nyquil. Schmutz asked Hinrichs if she would take a breathalyzer test, and she agreed. Taylor informed her that if the breathalyzer test was positive, she would be sent home. However, no breathalyzer was administered.

Instead, Hinrichs was reassigned for the day. She was moved from the Visiting Desk to an assignment in Female I.D., a less public location. Although she was required to work unarmed for the day, the Department concedes she was not impaired, in the sense of being "under the influence," because of any alcohol consumption.

According to the petition for writ of mandate, Schmutz prepared a report of the incident, as did a Lieutenant Carney. Also, the Department obtained at

least one other written statement from a witness who stated she smelled only medicine on Hinrichs's breath.[1]

In February of 2000, the Department gave Hinrichs a written notice she was the subject of an internal affairs investigation, and that the allegation was "use-of-alcohol" on November 5, 1999. The internal affairs investigation included a more formal interrogation of Hinrichs, who was accompanied by counsel. At the commencement of that interrogation, Hinrichs was given a written advisement of the "Peace Officer Bill of Rights." At the conclusion of the interrogation, Hinrichs's counsel served the Department with a written demand for "transcribed copies of any notes made by a stenographer and copies of any reports or complaints made by investigators or other persons, except those which are deemed by Orange County Sheriff-Coroner Department to be confidential, that relate to this matter." In response to that request, the Department stated it would release reports to Hinrichs only if she "is given discipline higher than a written reprimand . . . ."

On April 14, 2000, the Department, through Captain Harry Gage, issued Hinrichs a letter of reprimand. The letter explained that by reporting to work with the odor of alcohol on her breath, Hinrichs "alienate[d] your co-workers and opened the department, as well as yourself, to liability. You were scheduled to work a 'Visiting' position. Imagine the public's reaction to the odor of alcohol on the person who is running a visiting session. These are the people that pay your wages and expect that you will be professional enough to perform your duties. You are expected to be prepared for emergencies as well as the daily operation of the area. How much trust can the public, co-workers or supervisors have in your ability to handle the job if you smell of alcohol? Additionally, you caused the Sergeants to have to re-deploy manpower to cover the position you failed to be prepared for. This behavior was irresponsible and wholly unprofessional."

The letter then stated that Hinrichs's reprimand was for violation of two sections of the Department's manual of rules and regulations, i.e., sections 31.01.0 and 31.35.0. Section 31.01.0, titled "Standard of Conduct," provides: "Members shall conduct their private and professional lives in such a manner as to avoid bringing discredit upon themselves or the Department." Section 31.35.0, titled "Use of Alcohol," provides: "Members of the department shall not report for duty or be on duty while under the influence of an alcoholic beverage or drugs or be unable to effectively carry out their duties and responsibilities because of their use. The odor of an alcoholic beverage on the

---

[1] In its answer, the Department denies the allegation that it obtained the alleged witness statement, and claims to have insufficient information to admit or deny the allegations that Schmutz and Carney prepared reports.

breath will be considered presumptive evidence of a violation of this section. No member shall drink any alcoholic beverage while on duty except when necessarily consumed in the line of duty."

Hinrichs appealed the reprimand by requesting a meeting with Captain Gage. In her appeal, she asserted, among other things, that she had been denied materials in violation of her rights, that the regulation was vague, and that her actions had not violated the regulation. Gage denied her appeal, but with the comment that "Department issued the reprimand for 'odor of an alcoholic beverage.' There is no belief or accusation that . . . Hinrichs was intoxicated or impaired."

Hinrichs proceeded with the next step of the administrative appeal process, by requesting relief from the department of human resources. While that request was pending, she filed her petition for a writ of administrative mandamus. She alleged, among other things, that she had been denied the rights guaranteed to her under Government Code section 3303, including her right to be informed of the nature of her initial interrogation conducted by Schmutz and Taylor, and her right to obtain copies of all nonconfidential reports and witness statements pertaining to her case. She further alleged that the use-of-alcohol regulation (§ 31.35.0 of the Department's manual of rules and regulations) did not give her adequate notice that the mere odor of alcohol was proscribed conduct. Hinrichs also alleged violation of her right to substantive due process, on the basis the use-of-alcohol regulation was unconstitutional, because the presumption it imposed had the effect of shifting the burden of proof to her.

The trial court denied Hinrichs's petition, concluding any claim based upon violation of Hinrichs's substantive rights was not ripe because her administrative appeal had not yet been fully resolved. The court then denied her relief based upon the alleged procedural violations.

## I

Hinrichs first argues the Department violated her rights under Government Code section 3303 (hereafter section 3303), because it failed to inform her of the nature of its investigation prior to her initial interrogation by Schmutz and Taylor. The Department counters with the assertion that interview did not constitute an "interrogation" under the statute. We need not resolve that dispute, however, because we conclude the error, if any, was harmless.

■ Section 3303 specifies the rights that must be accorded to an officer under several different scenarios. First, the statute imposes no requirements in the case of "any interrogation of a public safety officer in the normal course of duty, counseling, instruction, or informal verbal admonishment by, or other routine or unplanned contact with, a supervisor or any other public safety officer," nor does it apply in the case of "an investigation concerned solely and directly with alleged criminal activities." (§ 3303, subd. (i).)

■ Second, the statute imposes its basic requirements in every case where the interrogation "*could lead* to punitive action" (italics added), which is defined as "any action that may lead to dismissal, demotion, suspension, reduction in salary, written reprimand, or transfer for purposes of punishment." Those basic requirements include conducting the interrogation at a reasonable hour, preferably during the officer's working hours, for a reasonable period of time, in a reasonable and nonthreatening manner (§ 3303, subds. (a), (d) & (e)); and informing the officer of the nature of the investigation, as well as the name, rank and command of the persons present, prior to the commencement of the interrogation (§ 3303, subds. (b) & (c)). The officer must be afforded the opportunity to bring his or her own recording device to record the interrogation, and if the interrogation is recorded by the department, the officer must be given access to the tape recording or stenographer's notes. Additionally, the officer is also entitled to copies of any reports or complaints made by investigators or others, except those deemed by the department to be confidential. (§ 3303, subd. (g).)

■ Third, the statute imposes an additional requirement "[u]pon the filing of a formal written statement of charges, or whenever an interrogation focuses on matters that *are likely to result in punitive action* against any public safety officer . . . ." At that point, the "officer, at his or her request, shall have the right to be represented by a representative of his or her choice who may be present at all times during the interrogation." (§ 3303, subd. (i), italics added.)

Finally, if prior to or during the interrogation, "it is deemed that he or she *may be charged with a criminal offense*, he or she shall be immediately informed of his or her constitutional rights." (§ 3303, subd. (h), italics added.)

Hinrichs argues that her initial questioning by Schmutz and Taylor constituted an interrogation pursuant to section 3303, because it did not occur in the normal course of duty. Instead, it was a specific response to a one-time concern about Hinrichs's condition when she reported for work, not an everyday part of the job. And she asserts it was not "unplanned," as it took place an hour after the concern arose, when she was called into the watch commander's office for the specific purpose of answering questions before

two supervisors. Thus, she concludes that interrogation triggered the basic protections specified in section 3303 for any interrogation that *could lead* to punitive action, including the right to be informed of the nature of the investigation prior to her interrogation.

■ However, procedural due process violations, even if proved, are subject to a harmless error analysis. (*People v. Woodward* (1992) 4 Cal.4th 376, 387 [14 Cal.Rptr.2d 434, 841 P.2d 954].) In this case, Hinrichs does not even argue that the Department's failure to expressly inform her of the name and rank of the officers interrogating her, or of the nature of the investigation, prejudiced her. She does not contend that either Sergeants Schmutz or Taylor were unknown to her at the time of the initial questioning, nor does she assert that she was confused about the nature of the investigation during that initial questioning.

In fact, the initial question posed to Hinrichs was self-explanatory. According to her petition, the questioning was prefaced with Schmutz's statement that he had smelled the odor of alcohol on her breath when he had opened the door for her, and then commenced with inquiring as to whether Hinrichs had consumed any alcohol. In our view, that prefatory statement and initial question should have adequately put Hinrichs on notice that she was being investigated for use of alcohol. The failure to otherwise expressly say so was harmless as a matter of law.

In that respect, *City of Los Angeles v. Superior Court* (1997) 57 Cal.App.4th 1506 [67 Cal.Rptr.2d 775], is distinguishable. In that case, the officer was being investigated pursuant to an allegation he had failed to stop at the scene of an automobile accident—a serious charge. However, in the officer's initial interrogation, he was questioned only about whether he had taken a departmental vehicle without permission during the time in question—a significantly less serious charge, but one that tended to establish his culpability for the failure to stop incident. Under those circumstances, the failure to notify the officer of the actual subject of the investigation was misleading and therefore prejudicial. There is no evidence of such misleading questioning in this case.

## II

Hinrichs next argues the Department impermissibly denied her copies of reports required by section 3303. We agree. This issue does not require any determination as to whether Hinrichs's initial questioning constituted an "interrogation" pursuant to section 3303, because her writ petition does not reflect that she made any demand for any documents in connection with that initial questioning. Instead, Hinrichs alleges that she and her counsel subsequently met with investigators from the internal affairs department for a

second, more formal interrogation. At the conclusion of that interrogation, Hinrichs's counsel made a written demand, pursuant to section 3303, subdivision (g), for various documents including "copies of any reports or complaints made by investigators or other persons, except those which are deemed confidential . . . ." That request was denied on the basis that such documents would be provided only if the recommended discipline was greater than a written reprimand.

The Department makes various attempts to justify its refusal to provide Hinrichs with the written documents specified in section 3303, but none is persuasive. The Department first suggests, as reflected in its letter denying Hinrichs's request, that it had no duty to provide the reports unless the discipline imposed was greater than a written reprimand. It contends that the significant procedural due process protections specified in *Skelly v. State Personnel Bd.* (1975) 15 Cal.3d 194 [124 Cal.Rptr. 14, 539 P.2d 774], would not be required in the case of a mere written reprimand. But that argument, even if true, is irrelevant. The obligation to produce the documents was not based upon *Skelly*; instead, it was a requirement of section 3303, which is expressly made applicable in the case of a written reprimand.

The Department next suggests that under section 3303, subdivision (g), Hinrichs was not entitled to "pre-interrogation" documents, which it defines as any documents *created prior to* her formal internal affairs interrogation. In this regard, the Department relies upon *Pasadena Police Officers Assn. v. City of Pasadena* (1990) 51 Cal.3d 564 [273 Cal.Rptr. 584, 797 P.2d 608]. In our view, the Department has misread that case.

In *Pasadena*, the issue before the court was the timing of mandatory discovery under section 3303, former subdivision (f) (now subd. (g)), not the scope of that discovery. The court was solely concerned with the investigative problems created by compelling disclosure of all investigative notes and reports to the officer under investigation prior to his or her interrogation: "Disclosure before interrogation might color the recollection of the person to be questioned or lead that person to conform his or her version of an event to that given by witnesses already questioned. . . . [¶] Furthermore, to require disclosure of crucial information about an ongoing investigation to its subject before interrogation would be contrary to sound investigative practices. During an interrogation, investigators might want to use some of the information they have amassed to aid in eliciting truthful statements from the person they are questioning. . . . [¶] . . . Based on our review of the statutory language and the purpose underlying the Act, we conclude that the Legislature intended subdivision (f) [now subd. (g)] to require law enforcement agencies to disclose reports and complaints to an officer under an internal affairs investigation only after the officer's interrogation. Because entitlement

to preinterrogation discovery is neither apparent from the language of subdivision (f) nor fundamental to the fairness of an internal affairs investigation, and because such mandatory discovery might jeopardize public confidence in the efficiency and integrity of its police force, we decline to engraft such a right onto the Act." (*Pasadena Police Officers Assn. v. City of Pasadena, supra,* 51 Cal.3d at p. 579, italics omitted.) Nothing in *Pasadena* suggests the court was drawing a distinction between documents *created* before an interrogation and those created after.

The Department also suggests that any failure to produce documents to Hinrichs was harmless, in any event, because "any information obtained before her Internal Affairs interrogation on March 16, 2000, has [*sic*] already been included and summarized in the written reprimand from Captain Gage, which was provided to [Hinrichs.]" We are not persuaded. Hinrichs specifically alleged, on information and belief, that the Department obtained a written statement from another officer stating that Hinrichs's breath smelled only of medicine on the day in question. The Department, in its answer, denied the allegation. Clearly, in a case such as this, where the sole allegation against Hinrichs concerned the odor of her breath, the issue of whether such a report was made would seem significant. The Department's refusal to produce whatever reports were in its possession cannot be presumed harmless.

### III

Finally, Hinrichs disputes the propriety of the Department's manual of rules and regulations section 31.35.0, the use-of-alcohol regulation. She contends the regulation is unconstitutional because it imposes a presumption that the odor of alcohol on the breath evidences an impairment, and thus shifts to her the burden of proving she was not under the influence of alcohol at the time in question. We are unpersuaded by the contention.

■ Hinrichs's argument is unavailing because the regulation's imposition of an *evidentiary presumption* does not shift the burden of proof. As this court has explained in another context, an evidentiary presumption merely shifts the burden of producing evidence. (*In re Glacier General Ins. Co.* (1991) 234 Cal.App.3d 1549, 1555 [286 Cal.Rptr. 262], citing *Rancho Santa Fe Pharmacy, Inc. v. Seyfert* (1990) 219 Cal.App.3d 875, 884 [268 Cal.Rptr. 505].)

In this case, the use-of-alcohol regulation simply provides, in pertinent part, that "the odor of an alcoholic beverage on the breath will be considered presumptive evidence of a violation of this section." Once that presumptive evidence is offered, Hinrichs has the opportunity to rebut it or offer evidence that in the context of her work duties, including where she actually stood or

sat in relation to any visiting members of the public, the odor of alcohol on her breath would not be detectable or would be recognizable as medicinal rather than recreational. After she had that opportunity, the evidence would have to be weighed in light of the Department's burden of proving that the odor of alcohol not only existed, but in fact interfered with her ability to perform her duties.

Since the odor of alcohol is not proscribed by this regulation, but is merely evidence creating a rebuttable presumption of alcohol use which caused the officer to be unable to perform his or her duties, nothing in the provision alters the ultimate burden of proving the violation. That burden remains with the Department.

## IV

We are, however, concerned that the Department's letter of reprimand and the Department's decision on appeal—when each is set side by side with the controlling regulation—are at best confusing and at worst, completely inconsistent.

Section 31.35.0 of the Department's manual of rules and regulations provides: "Members of the department shall not report for duty or be on duty while under the influence of an alcoholic beverage or drugs or be unable to effectively carry out their duties and responsibilities because of their use. The odor of an alcoholic beverage on the breath will be considered presumptive evidence of a violation of this section. No member shall drink any alcoholic beverage while on duty except when necessarily consumed in the line of duty."

Yet the letter of reprimand does not use the phrase "be unable to effectively carry out [your] duties and responsibilities because of [alcoholic beverage] use." Nor does it cite the presumption, although it refers to "odor of alcohol" and "smell of alcohol." It states, in substance, that Hinrichs could not do her assigned job because of the odor of alcohol.

Specifically, the letter of reprimand states Hinrichs "alienate[d] your co-workers and opened the department, as well as yourself, to liability. You were scheduled to work a 'Visiting' position. Imagine the public's reaction to the odor of alcohol on the person who is running a visiting session. These are the people that pay your wages and expect that you will be professional enough to perform your duties. You are expected to be prepared for emergencies as well as the daily operation of the area. How much trust can the public,

co-workers or supervisors have in your ability to handle the job if you smell of alcohol? Additionally, you caused the Sergeants to have to re-deploy manpower to cover the position you failed to be prepared for. This behavior was irresponsible and wholly unprofessional."

The letter of reprimand does not provide any evidentiary basis for these conclusions. There is no evidence in our record to suggest any coworkers were "alienated." Nor is there any indication of a likelihood any members of the public would be close enough to smell Hinrichs's breath (as close, for example, as the deputy who held the door open for her and smelled her breath). That may have been clear to the preparers of the letter, but it does not show up anywhere in the record, and without knowing that, we cannot evaluate the discipline. Finally, we can see no connection between the odor of Hinrichs's breath and her ability to "be prepared for emergencies," since the Department explicitly rejected any conclusion she was impaired or under the influence. This leaves us uncertain of the connection between the regulation and the purported violation.

Furthermore, the record does not reflect any opportunity for Hinrichs to come forward and rebut the presumption. It appears the letter was based simply upon the odor of alcohol and she was provided no opportunity to rebut the presumption that odor created. There may have been such an opportunity, but it does not show up in our record.

And the decision of Captain Harry Gage on appeal added nothing. It merely stated: "No change in written reprimand. Department issued the reprimand for 'odor of an alcoholic beverage.' There is no belief or accusation that [unreadable] Hinrichs was intoxicated or impaired." On its face, the decision states that "Department issued the reprimand for 'odor of an alcoholic beverage.' " This statement supports Hinrichs's argument that the Department's decision was based on "odor of alcohol" only and not on a conclusion she was not able to carry out her duties. The explanation of the discipline contained in the decision on appeal does not correspond to the test of whether Hinrichs was able to perform her duties. Instead, it relies only on "odor of alcohol." Was this a use of the presumption? If a presumption was used—the Department now denies it was—Hinrichs must have an opportunity to rebut it.[2] Was the question of Hinrichs's ability to do her job analyzed on appeal? Unfortunately, the record presented us is too confusing to allow us to conclude with any certainty whether it was or not. It is possible the letter of reprimand and the decision on appeal are inconsistent with each other. This will all need clarification if the Department chooses to try again.

---

[2] Neither party has provided us with the Department's regulations in their entirety. Both parties assume section 31.35.0 applies to the letter of reprimand at issue here. If so, the presumption should apply and be subject to rebuttal.

V

The Department also contends the reprimand issued to Hinrichs is proper even if the use-of-alcohol regulation is inapplicable on these facts. It points out that the reprimand was ultimately grounded upon the alleged violation of two regulations, the use-of-alcohol regulation and the standard-of-conduct regulation. It asserts the latter, which requires officers to "conduct their private and professional lives in such a manner as to avoid bringing discredit upon themselves or the Department" is adequate to support discipline in this case.

We disagree. Hinrichs was never notified that she had been charged with any violation of the general standard-of-conduct regulation. She was given only one written notice of the charges against her, in a memorandum informing her of the commencement of the formal internal affairs investigation. That notice specified that the allegation against her was "Use of Alcohol," which is the exact title of the Department's manual of rules and regulations section 31.35.0. And it was written just that way, like a title, with initial capitalization. Under those circumstances, it is difficult, if not impossible, to interpret the notice as merely reciting a general description of her alleged misconduct, or as giving her fair warning that she was accused of violating any other regulation. To the contrary, it appears to specifically limit the charge to a violation of section 31.35.0.

█ We do not necessarily disagree with the Department's contention that it was not obligated to give Hinrichs more than a general description of the allegations against her. Section 3303 provides only that she is entitled to be "informed of the nature of the investigation prior to any interrogation." (§ 3303, subd. (c).) Under that standard, it would be difficult to argue Hinrichs was entitled to a detailed specification of the exact charges leveled. However, in our view, if the Department does choose to specify a particular regulation that the officer is alleged to have violated, and provides *no other description of the alleged wrongful conduct*, the Department cannot thereafter impose discipline based upon a different regulation.

The order is reversed with directions to the trial court to let a writ of mandate issue, compelling respondents to reverse their issuance of a written reprimand to Hinrichs stemming from her conduct on November 5, 1999. Hinrichs is to recover her costs on appeal.

Aronson, J., and Fybel, J., concurred.