Filed 2/24/15  Rodgers v. Riverside Co. CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| MICHELLE RODGERS, | |
| Plaintiff and Respondent, | G050403 |
| v. | (Super. Ct. No. RIC 10018372) |
| RIVERSIDE COUNTY et al., | ORDER MODIFYING OPINION AND DENYING PETITION FOR REHEARING; CHANGE IN JUDGMENT; DENIAL OF REQUEST FOR PUBLICATION |
| Defendants and Appellants. | |

It is ordered that the opinion filed on January 28, 2015 be modified as follows:

On page 3, the sentence comprising the second full paragraph, which states, "We reverse and remand for the trial court to affirm the arbitrator's order," shall be deleted and replaced with the following:  "We reverse and remand for the trial court to conduct a new hearing on the petition for writ of mandate."

On page 13, the first sentence of the first paragraph under "DISPOSITION," which states, "The judgment is reversed and the case is remanded to the superior court with directions to deny the writ of mandate and to reinstate the order of termination," shall be deleted and replaced with the following: "The judgment is reversed and the case is remanded to the superior court with directions to conduct a new hearing on the petition for writ of mandate in which the court shall consider evidence of both plaintiff's failure to report her DUI conviction and plaintiff's denial of outside employment together with any other evidence previously considered."

The modification changes the judgment. The petition for rehearing is DENIED.

Defendants requested that our opinion, filed January 28, 2015, be certified for publication. Our opinion does not meet the standards set forth in California Rules of Court, rule 8.1105(c). The request is DENIED.

The clerk of this court is directed, pursuant to rule 8.1120(b) of the California Rules of Court, to forward a copy of our opinion, this order, and the request for publication to the California Supreme Court.


THOMPSON, J.

WE CONCUR:


RYLAARSDAM, ACTING P. J.


BEDSWORTH, J.

2

Filed 1/28/15  Rodgers v. Riverside County CA4/3 (unmodified version)

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| MICHELLE RODGERS, | |
| Plaintiff and Respondent, | G050403 |
| v. | (Super. Ct. No. RIC 10018372) |
| RIVERSIDE COUNTY et al., | O P I N I O N |
| Defendants and Appellants. | |

Appeal from a judgment of the Superior Court of Riverside County, Ronald L. Taylor, Judge.  Reversed and remanded.

The Zappia Law Firm, Edward P. Zappia and Anna Zappia for Defendants and Appellants.

Stone Busailah, Michael P. Stone, Muna Busailah and Robert Rabe for Plaintiff and Respondent.

\*          \*          \*

Plaintiff and respondent Michelle Rodgers was terminated from her position as a probation officer for defendant Riverside County, where defendant Alan M. Crogan was the Chief Probation Officer (collectively defendants). Upon her appeal, an arbitrator affirmed the termination based on the cumulative effect of "[d]ishonesty," "[i]nefficiency or negligence in performance of duties," and "willful violation of an employee regulation." These three grounds were based, in part, on findings of poor work performance, dishonesty in denying outside employment, and failure to report a conviction for driving under the influence.

Plaintiff filed a petition for writ of mandate in the superior court, alleging defendants "did not proceed in the manner required by law," the evidence did not support the arbitrator's findings, and the decision is not supported by the findings.

The trial court issued the writ. It found plaintiff had not been employed in a second job and had been questioned about that issue without being advised of her right to have a union representative present, in violation of POBRA (Public Safety Officers' Procedural Bill of Rights Act; Gov. Code, § 3300 et seq.[1]). As a result the trial court suppressed any statements plaintiff made during the interview where she was questioned.

The court also held the termination on the ground plaintiff failed to report her driving under the influence conviction was barred under a POBRA statute of limitations because defendants did not provide written notice to plaintiff of the intent to terminate her within one year of discovering that basis for termination.

The court ordered the arbitrator to set aside his decision affirming plaintiff's termination based on the combined charges and remanded the matter for the arbitrator to decide what discipline was proper based solely on plaintiff's poor work performance.

---

[1] All further statutory references are to this code unless otherwise stated.

2

Defendants contend the trial court erred by excluding plaintiff's statements she had no outside employment, applying the POBRA statute of limitations to exclude the DUI as a basis for termination, and failing to consider other instances of dishonesty on plaintiff's part to support the arbitrator's finding of dishonesty. Defendants also argue plaintiff did not timely raise her POBRA arguments.

We reverse and remand for the trial court to affirm the arbitrator's order.

## FACTS AND PROCEDURAL HISTORY

Plaintiff was hired as a Deputy Probation Officer I in December 2001 and worked in the probation office in Perris. A year later she was promoted to Deputy Probation Officer II. Her annual review in December 2004 showed she needed improvement in the "'meets court and statutory deadlines'" category. And her supervisor's "'biggest concern'" was that she "'tend[ed] to turn reports in at the last moment. . . . In the Adult investigation assignment, she repeatedly failed to meet dictation deadlines'" and "'performed below satisfactory level.'"

Her 2006 evaluation showed she "'[met] performance standards'" in most categories, but she continued to need improvement in "'meets court and statutory deadlines'" and "'work relationships.'" Although plaintiff had "'improved communication with her supervisor,'" she had been "'disrespectful to senior staff and acting senior staff regarding her reports and use of flex/benefit time.'"

At her request plaintiff was transferred to a different office, due to threats to her son because of her position. She was unhappy she was sent to the Southwest Justice Center because of the commute and her belief she was being retaliated against to some extent. Within a couple of months her supervisor, Ileen McKnight, reported to McKnight's supervisor, Mark Hake, the Southwest division director, that plaintiff's reports were so late they had to be hand delivered to the courthouse.

In May 2007 plaintiff was given a written reprimand for "'inefficiency and negligence in the performance of duties,'" based on 18 reports not timely provided to the

3

court. Concurrently she was issued a Performance Improvement Plan setting out the specific improvements plaintiff needed to make.

In addition, she received a performance evaluation for the period beginning December 2006. Plaintiff scored lower than on prior evaluations, rated as "'unacceptable'" in "'planning and conducting thorough investigations,'" "'meets court and statutory deadlines,'" "'makes supervisor aware of special problems,'" "'personal characteristics,'" and "'work habits.'" In four other categories she was rated as needing improvement. Although she met "'acceptable standards'" in seven categories, the "overall tone of the evaluation [was] negative" and she did not receive a merit raise.

In August 2006 after plaintiff was arrested for driving under the influence, she reported it to her supervisor. On June 20, 2007, plaintiff pleaded guilty to misdemeanor driving under the influence. She did not report her conviction. On June 25, 2007 the California Department of Justice (DOJ) sent its Criminal Information Index printout to defendants, which showed the conviction.

By August 2007 defendants had hired an investigator regarding a workers' compensation matter involving plaintiff. After a coworker saw plaintiff working in a booth selling spas at the Anaheim Convention Center, the workers' compensation investigator was directed to surveil plaintiff to discover if she was employed by the spa company. The next month the investigator reported plaintiff had been at the vendor booth for the weekend. Plaintiff had spoken to customers, handed out brochures, demonstrated the spas' features, and detailed the costs and available financing. The investigator videotaped her activity. He was given a business card with a third person's name crossed out and plaintiff's name inked in. He also learned plaintiff was scheduled to work at home improvement shows in two other locations the next two weekends.

After McKnight learned of this, she explained to plaintiff she needed to get permission to engage in outside employment. When she asked if plaintiff already had a second job, plaintiff said no. McKnight gave her defendants' written policy as to outside

4

employment, which contained a form for employees to report it. Before completing the form, plaintiff left the meeting to speak with her union representative. After a telephone conversation with him, later that day plaintiff returned the form to McKnight. She had checked the box next to the statement, "'I am not employed outside the Department'" and signed it.

Plaintiff's performance evaluation in September 2007 noted she had improved in satisfying court deadlines, thereby meeting acceptable standards. But her other ratings were predominantly unacceptable or showed she needed improvement. At the same time, plaintiff was given a written reprimand based on her substandard review.

In December 2007 plaintiff received another performance evaluation, containing six ratings of "'unacceptable,'" four "'improvement needed,'" and seven "'meets performance standards.'" In none of the categories was plaintiff rated "'exceeds performance standards'" or "'outstanding.'" Plaintiff was also given an improvement plan and a written reprimand and was not approved for a merit raise. Plaintiff filed a grievance as to the evaluation and the reprimand. The grievance was sustained because the evaluation was insufficient in certain categories and the discipline revoked until the deficiencies in the evaluation were corrected. McKnight supplemented the explanations for the ratings and did not change any of the evaluations.

On June 27, 2008, defendants transmitted to plaintiff a Notice of Proposed Termination; in July she was terminated from her position. Defendants relied on five bases for termination set out in the Memorandum of Understanding[2]: Dishonesty; negligent performance of duties; intentional violation of a department regulation; conviction of a felony or any offense involving moral turpitude or affecting performance of duties; and conduct adversely affecting job performance.

_____

[2] Although the parties did not explicitly state this or direct us to a record reference, apparently this document is the contract between defendants County and the probation officers.

Thereafter plaintiff's appeal of the termination was heard by a "neutral arbitrator." His advisory opinion upholding the termination relied on dishonesty, i.e., failure to report her driving under the influence conviction and her outside employment, negligent performance of duties, and intentional violation of a department regulation.

Plaintiff then filed her petition for writ of mandate, arguing the arbitrator's findings were not supported by the evidence. The trial court issued the writ on several grounds. It held termination based on plaintiff's failure to report her drunk driving conviction was barred by the statute of limitations in POBRA (§ 3304, subd. (d)(1)) that requires an agency to take punitive action against an employee within one year of discovering the basis for the discipline. The court found defendants learned of plaintiff's drunk driving conviction on June 25, 2007 but did not serve her with the Notice of Proposed Termination until June 27, 2008.

The court also ruled defendants violated plaintiff's right under POBRA (§ 3303) to have a representative present when she was questioned about her outside employment. The court found suppression of evidence adduced during this meeting was the proper relief for defendants' violation. The court rejected defendants' argument plaintiff did not timely raise her POBRA defenses within the three-year statute of limitations (§ 3309.5).

As to plaintiff's unacceptable work performance, the court upheld the arbitrator's factual findings and conclusion it was grounds for termination. It noted, however, the arbitrator never found poor work performance standing alone warranted termination. Rather, termination was proper based on the cumulative effect of the three charges the arbitrator sustained. Therefore, in granting the writ, the court ordered the arbitrator to reverse his decision affirming termination and to decide the proper discipline based solely on plaintiff's work performance.

Additional facts are set out in the discussion.

6

## DISCUSSION

### 1. Applicable Law and Standard of Review

One ground for superior court review of administrative decisions in a mandamus proceeding is whether "there was any prejudicial abuse of discretion." (Code Civ. Proc., § 1094.5, subd. (b).) A party shows abuse of discretion if the agency "has not proceeded in the manner required by law, the order or decision is not supported by the findings, or the findings are not supported by the evidence." (*Ibid*.) In the trial court plaintiff relied on all of these factors.

In a matter affecting the fundamental vested right of a party, when reviewing the administrative record the trial court must exercise its independent judgment. (*Candari v. Los Angeles Unified School Dist*. (2011) 193 Cal.App.4th 402, 407.) An employee's right to her job is such a fundamental vested right. (*Davis v. Los Angeles Unified School Dist. Personnel Com.* (2007) 152 Cal.App.4th 1122, 1130.)

"If the decision of an administrative agency will substantially affect such a right, the trial court not only examines the administrative record for errors of law but also exercises its independent judgment upon the evidence disclosed in a limited trial de novo." (*Bixby v. Pierno* (1971) 4 Cal.3d 130, 143, fn. omitted.) The court may "draw its own reasonable inferences from the evidence and make its own credibility determinations." (*Candari v. Los Angeles Unified Sch. Dist*., *supra*, 193 Cal.App.4th at p. 407.) Nevertheless, the court "must afford a strong presumption of correctness concerning the administrative findings, and the party challenging the administrative decision bears the burden of convincing the court that the administrative findings are contrary to the weight of the evidence." (*Fukuda v. City of Angels* (1999) 20 Cal.4th 805, 817.)

On appeal, the court relies on the substantial evidence test, reviewing the factual bases of the trial court's decisions, not those of the arbitrator. (*MHC Operating Limited Partnership v. City of San Jose* (2003) 106 Cal.App.4th 204, 218.) In so doing,

7

however, we "'"may look to the findings in the [administrative agency's] decision for guidance in determining whether the trial court's judgment is supported by substantial evidence." [Citation.]' [Citation.]" (*Green v. Board of Dental Examiners* (1996) 47 Cal.App.4th 786, 796.) We review questions of law de novo. (*Anserv Ins. Services, Inc. v. Kelso* (2000) 83 Cal.App.4th 197, 204.)

*2. Exclusion of Driving Under the Influence Conviction*

There is no dispute plaintiff was dishonest in failing to report her drunk driving conviction to defendants. The trial court, however, ruled the conviction could not be used as a basis to uphold her termination because defendants had not acted on it in a timely fashion. Defendants contend this was error.

Pursuant to section 3304, subdivision (d)(1), "no punitive action . . . shall be undertaken for any act, omission, or other allegation of misconduct if the investigation of the allegation is not completed within one year of the public agency's discovery by a person authorized to initiate an investigation of the allegation of an act, omission, or other misconduct. . . . In the event that the public agency determines that discipline may be taken, it shall complete its investigation and notify the public safety officer of its proposed discipline by a Letter of Intent . . . articulating the discipline that year, except as provided in paragraph (2)."

Defendants were notified on June 25, 2007 by the DOJ when it sent a printout showing plaintiff had been convicted of drunk driving.[3] The report was not addressed to anyone in particular but sent to defendants' general post office box.

---

[3] The evidence is somewhat contradictory on this point. The DOJ notice is dated June 25, 2007. The Administrative Investigation report states defendants were "notified" of plaintiff's conviction when the DOJ printout was received. At the hearing, after his recollection was refreshed by reviewing that report, in response to a question from plaintiff's counsel, Hake testified the date defendants were notified was June 25, 2007. When pressed as to whether he had any basis to believe that date was incorrect, he said no. The arbitrator stated defendants received the report on June 25.

8

Defendants issued the Notice of Proposed Termination on June 27, 2008 relying, in part, on plaintiff's dishonesty in failing to report her conviction.

The arbitrator found plaintiff's failure to report her driving under the influence conviction was a proper basis for discipline. He also discounted plaintiff's argument the statute of limitations under section 3304, subdivision (d)(1) barred any discipline on this basis.

While acknowledging defendants' constructive knowledge on June 25, 2007 of the date of plaintiff's conviction, the arbitrator found neither defendants generally, nor any person with authority to initiate an investigation, had actual knowledge on that date.

Instead, he stated it was "entirely reasonable to conclude that some time past [*sic*], at least two days, before a representative of the [defendants] actually saw the record of the conviction and realized that the [plaintiff] had not reported the conviction. Indeed, it seems highly likely that the [defendants] may not have had actual knowledge of the failure to report until the investigation of the conviction was actually underway [*sic*] in July of 2007."

The trial court found the language of the preceding paragraph to be pure speculation, ruling it was not supported by any evidence. Of course, the trial court may draw its own inferences from the evidence. (*Candari v. Los Angeles Unified School Dist.*, *supra*, 193 Cal.App.4th at p. 407.) Based on the evidence defendants received notice on the same date the document was dated, as unlikely as that is, the court had the right to infer someone from the department received notice.

But as the arbitrator iterated and reiterated in his discussion of this issue, section 3304, subdivision (d)(1) requires that the person authorized to order an investigation of the alleged misconduct must have notice. Plaintiff's expert witness at trial testified, without objection, that the date triggering the statute of limitations is "the

9

date that a supervisor becomes aware of the allegations." That supervisor was Hake. It was not reasonable for the court to infer Hake had notice before June 27, 2007.

In the trial court, plaintiff bore the burden of showing that the arbitrator's findings were """"contrary to the weight of the evidence."""" (*Fukuda v. City of Angels*, *supra*, 20 Cal.4th at p. 817.) She fails to direct us to any evidence that showed Hake had notice of her driving under the influence conviction on June 25 or June 26, 2007. Because the statute of limitations did not begin to run until Hake had notice, there is no evidence to support the trial court's finding the arbitrator "abused [his] discretion in disregarding the statute of limitations." Thus, it was error for the trial court to exclude evidence of plaintiff's failure to report her conviction as a basis to uphold her termination.

*3. Exclusion of Evidence About Outside Employment*

One of the grounds underlying the arbitrator's decision to uphold plaintiff's termination was her dishonesty in denying outside employment. The trial court ruled defendants could not rely on this alleged dishonesty about outside employment because they conducted an "impermissible interrogation in violation of POBRA," specifically section 3303, by failing to inform her of the nature of the investigation and failing to give her the right to be represented at the meeting where she was asked about a second job.

Section 3303, subdivisions (c) and (i), provide: "When any public safety officer is under investigation and subjected to interrogation by . . . her commanding officer, or any other member of the employing public safety department, that could lead to punitive action, the interrogation shall be conducted under the following conditions. For the purpose of this chapter, punitive action means any action that may lead to dismissal, demotion, suspension, reduction in salary, written reprimand, or transfer for purposes of punishment. [¶] . . . [¶] (c) The public safety officer under investigation shall be informed of the nature of the investigation prior to any interrogation. . . . [¶] . . . [¶] (i) . . . [W]henever an interrogation focuses on matters that are likely to result in

10

punitive action against any public safety officer, that officer, at . . . her request, shall have the right to be represented by a representative of . . . her choice who may be present at all times during the interrogation."

The arbitrator and the trial court disagreed about whether plaintiff was actually employed outside the department. The arbitrator stated he was "convinced" she was employed and detailed what he described as the "strong" evidence of such employment, including her specific activities at the booth, the videotapes, and statements of third parties at the booth that plaintiff was selling and would be paid a commission.

The arbitrator also referred to "sincere testimony" by plaintiff and other witnesses that plaintiff was only "helping out her family." On the other hand, the court focused only on this latter part of the arbitrator's decision, calling plaintiff's work "volunteer efforts" while ignoring the explicit finding of employment. As noted above, the trial court was allowed to draw its own inferences and decide witness credibility. But the court did not cite to any evidence in the record to support its conclusions, as required by independent review, and instead merely referred to the arbitrator's findings.

For our purposes, however, we need not decide whether substantial evidence supported the trial court's conclusion plaintiff did not have a second job. Even if defendants' inquiry to plaintiff about outside employment violated section 3303, any error was harmless. (*Hinrichs v. County of Orange* (2004) 125 Cal.App.4th 921, 928 ["[P]rocedural due process violations, even if proved, are subject to harmless error analysis"].)

First, the question itself about whether plaintiff had outside employment and the explanation that she needed to report it informed plaintiff "of the nature of the investigation." (*Hinrichs v. County of Orange*, *supra*, 125 Cal.App.4th at p. 928.) This "should have adequately put [plaintiff] on notice" she was being questioned if not

11

investigated for failure to disclose that employment, whether paid or "volunteer work" as the trial court described it.[4] (*Ibid.*)

In *Hinrichs*, the plaintiff's supervisor told the plaintiff he had smelled alcohol on her breath when she arrived at work and inquired if she had been drinking. The court held the question itself gave the plaintiff notice she was being investigated for drinking. Any failure to expressly notify was harmless error. (*Hinrichs v. County of Orange*, *supra*, 125 Cal.App.4th at p. 928.) The same is true here.

Second, plaintiff was represented by her chosen representative. She asked to have time to speak with the representative and was not required to sign the form until she adjourned the meeting with McKnight and spoke to him about completing the form. Plaintiff had all the benefits of representation described under section 3303, subdivision (i). Any questioning of her about her second job without the representative being physically present was harmless error.

*4. Conclusion*

In sum, plaintiff did not meet her burden to show the arbitrator's decision was contrary to the weight of the evidence. None of the grounds on which the trial court relied to issue the writ of mandate was legally correct or supported by the record. Thus, the writ was issued in error.

---

[4] The first paragraph of the form given to plaintiff states work "paid or volunteer outside employment" "must be reported."

12

## DISPOSITION

The judgment is reversed and the case is remanded to the superior court with directions to deny the writ of mandate and to reinstate the order of termination. Defendants are entitled to costs on appeal.


THOMPSON, J.

WE CONCUR:


RYLAARSDAM, ACTING P. J.


BEDSWORTH, J.