Filed 3/19/25  P. v. Bradshaw CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>LAMONT DUSTIN BRADSHAW,<br><br>    Defendant and Appellant. | F087775<br><br>(Super. Ct. No. BF126716A)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County.  Kenneth C. Twisselman II, Judge.

Vanessa Place, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Kimberley A. Donohue, Assistant Attorney General, Louis M. Vasquez, Amanda D. Cary and Lewis A. Martinez, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

## INTRODUCTION

Defendant Lamont Dustin Bradshaw appeals the trial court's denial of his petition for recall and resentencing under Penal Code section 1170, subdivision (d) (section 1170(d)) as untimely.[1]  Defendant argues the trial court erroneously calculated the 15-year period of incarceration by crediting only time defendant spent in the custody of the Department of Corrections and Rehabilitation (CDCR) after he was sentenced rather than all the time defendant was in custody prior to his conviction and sentencing. Defendant further argues he was continuously incarcerated since August 2, 2008, and his petition on August 23, 2023, was filed after he had been incarcerated for more than 15 years.

We agree the 15-year period of incarceration required to file an initial petition under section 1170(d)(1)(A) includes time spent in custody before conviction and sentencing.  However, even including all time defendant was in custody prior to sentencing, the record establishes defendant was incarcerated for only 14 years and approximately six months prior to filing his petition.  As such, the petition was untimely, and we affirm on that basis.  Defendant remains free to file a timely petition for recall and resentencing under section 1170(d).

## FACTUAL BACKGROUND

An amended information filed in June 2009 charged defendant with conspiracy to commit premeditated murder (§§ 182, subd. (a)(1), 187; count 1), conspiracy to shoot at an inhabited vehicle (§§ 182, subd. (a)(1), 246; count 3); gang member carrying a loaded firearm (former § 12031, subd. (a)(2)(C); count 4); participation in a criminal street gang (§ 186.22, subd. (a); count 5); possession of a firearm while on probation (former

---

[1]     Further statutory references are to the Penal Code unless otherwise stated.

§ 12021, subd. (d); count 6); attempted premeditated murder (§§ 187, subd. (a), 664; count 7); and discharging a firearm at an occupied motor vehicle (§ 246; count 8).[2]

Enhancements were alleged under section 12022.53, subdivisions (d) and (e)(1), section 12022.55, and section 186.22, subdivision (b)(1), as to counts 1 and 3. Enhancements were alleged under section 186.22, subdivision (b)(1) and (4), as to counts 6, 7 and 8. Enhancements were alleged under section 12022.53, subdivisions (d) and (e)(1), as to counts 7 and 8. Pursuant to Welfare and Institutions Code section 707, former subdivision (d)(1), the amended information alleged defendant was over 16 years old as to all counts. Also, as to all counts, a serious prior conviction enhancement was alleged under section 667, subdivision (a), and as a prior strike under the "Three Strikes" law. (§§ 667, subds. (b)–(i), 1170.12, subds. (a)–(d).)

A jury found defendant guilty of counts 1, 3, 4, 5 and 6.[3] The jury acquitted defendant of attempted murder (count 7), and discharging a firearm at an occupied vehicle (count 8). He was sentenced to prison for a total of 50 years to life for count 1 (25 years to life for the substantive offense and 25 years to life for the firearm enhancement), plus a consecutive term of 15 years to life for count 3. The terms imposed on the remaining counts were stayed under section 654.

On appeal in 2011, the conviction on count 3 was reversed for lack of substantial evidence, and the matter was remanded for resentencing. On December 14, 2011, defendant was resentenced to 50 years to life on count 1; the upper term was imposed on counts 4 through 6, but those terms were stayed under section 654.

On August 23, 2023, defendant filed a petition seeking recall and resentencing under section 1170(d). The trial court denied the petition as untimely because defendant

---

[2]    The court struck count 2 by interlineation, which alleged another count of conspiracy to commit murder.

[3]    *People v. Bradshaw* (Aug. 11, 2011, F060386) (nonpub. opn.).

had not been in CDCR's custody for at least 15 years before the date his petition was filed. The court denied the petition alternatively for failing to meet the threshold eligibility criteria under section 1170(d)(2).

**DISCUSSION**

## I.     Applicable Law

Section 1170(d) allows juveniles sentenced to life without parole (LWOP) to petition for recall and resentencing to a term with parole. Pursuant to section 1170(d)(1)(A), "When a defendant who was under 18 years of age at the time of the commission of the offense for which the defendant was sentenced to imprisonment for [LWOP] has been incarcerated for at least 15 years, the defendant may submit to the sentencing court a petition for recall and resentencing."

The process of resentencing under section 1170(d) is initiated by a petition with the sentencing court. (§ 1170(d)(2).) "The petition shall include the defendant's statement that the defendant was under 18 years of age at the time of the crime and was sentenced to [LWOP], the defendant's statement describing their remorse and work towards rehabilitation, and the defendant's statement that one of the following is true:

"(A)   The defendant was convicted pursuant to felony murder or aiding and abetting murder provisions of law.

"(B)   The defendant does not have juvenile felony adjudications for assault or other felony crimes with a significant potential for personal harm to victims prior to the offense for which the sentence is being considered for recall.

"(C)   The defendant committed the offense with at least one adult codefendant.

"(D)   The defendant has performed acts that tend to indicate rehabilitation or the potential for rehabilitation, including, but not limited to, availing themselves of rehabilitative, educational, or vocational programs, if those programs have been available at their classification level and facility, using self-study for self-improvement, or showing evidence of remorse." (§ 1170(d)(2)(A)–(D).)

4.

If the court finds by a preponderance of the evidence that any of the statements in section 1170 (d)(2)(A)–(D) are true, the trial court shall recall the sentence and hold a resentencing hearing in the same manner as if the defendant had not previously been sentenced, provided that the new sentence, if any, is not greater than the initial sentence. (§ 1170(d)(5).)  The statute then lists factors the court may consider when determining whether to resentence the defendant to a term of imprisonment *with* the possibility of parole.  (§ 1170(d)(6)(A)–(H).)  The trial court may also resentence the defendant to a term that is less than the initial sentence if any factors listed in section 1170(d)(8) were a contributing factor in the commission of the offense:  the person has experienced psychological, physical, or childhood trauma, including, but not limited to, abuse, neglect, exploitation, or sexual violence; the person was under the age of 26 years at the time of the commission of the offense; or prior to the instant offense, or at the time of the commission of the offense, the person is or was a victim of intimate partner violence or human trafficking.  (§ 1170(d)(8)(A)–(C).)

In *People v. Heard* (2022) 83 Cal.App.5th 608 (*Heard*), the Court of Appeal concluded that equal protection principles require courts to extend the benefits of section 1170(d) to juveniles "sentenced to the functional equivalent of [LWOP]." (*Heard, supra*, at pp. 629–634 [§ 1170(d) violates equal protection guarantee by denying relief to juvenile offenders sentenced to functional equivalent of LWOP; finding a sentence of 103 years to life to be the functional equivalent of LWOP]; accord, *People v. Sorto* (2024) 104 Cal.App.5th 435, 439 (*Sorto*) [§ 1170(d) violates constitutional guarantee of equal protection by denying relief to juvenile offenders sentenced to functional equivalent of LWOP; sentence of 140 years to life functional equivalent of LWOP].)

## II.     Additional Background

### A.     Actual Custody Credit Calculations[4]

Defendant was convicted in August 2009.  In preparation for the sentencing hearing, a probation report was signed and prepared on October 12, 2009.  That report indicated defendant had been in custody at a juvenile facility from "08-02-08" to "08-20-09," and assigned 19 days of actual custody credit for that time period.  The report also indicated defendant was detained at the county jail from "02-18-09" to "10-20-09" (the date of the anticipated sentencing hearing), and calculated 245 days of actual time; the report calculated total actual custody credits as 264 days (19 + 245).

The sentencing hearing was continued, and a supplemental probation report was prepared on November 11, 2009.  In calculating actual custody credits, defendant was noted to have been in juvenile detention from "08-02-08" to "08-20-08" for a total of 19 days, and in county jail from "02-18-09" to "11-17-09" (the date of the anticipated sentencing hearing) for a total of 273 days; the actual days of custody was 292 (19 + 273).

The sentencing hearing was held on May 21, 2010.  The probation officer updated the actual custody credit total as 477 days (19 + 458).  Both parties submitted the matter to the court on the probation officer's calculation, and the court awarded 477 days of actual credit.

After an appeal in 2011, the case was remanded for resentencing, and a supplemental probation report was prepared on December 12, 2011.  It again noted defendant had been detained in juvenile hall from "08-02-08" to "08-20-08"; in county

---

**4**      On our own motion, the record was augmented to include supplemental probation reports filed on May 20, 2010, and December 13, 2011; a reporter's transcript of the December 14, 2011, resentencing hearing; a minute order from the December 2011 resentencing; and a certification there were no juvenile court records regarding defendant between August 2, 2008, and February 18, 2009.  We also granted the parties an opportunity to file supplemental briefs to address the augmented record items.

jail from "02-18-09" to "5-21-10"; and in CDCR custody from "05-22-10" to "12-14-11" (the anticipated date of resentencing). The report noted 19 days of credit for the juvenile detention, 458 days of credit for the county jail time, and 572 days of credit for time in CDCR custody for a total of 1,049 days of actual custody credits.

At the resentencing hearing on December 11, 2011, the trial court awarded 1,049 days of actual credit, which was noted in the minute order following the resentencing hearing.[5] Defendant filed a petition for resentencing under section 1170(d) on August 23, 2023.

## B.     Trial Court's Decision on Defendant's Resentencing Petition

At the hearing on defendant's petition, the trial court found defendant's sentence of 50 years to life to be the functional equivalent of LWOP for purposes of section 1170(d).[6] The trial court nevertheless denied the petition, reasoning the statute requires a petitioner to have been in the custody of CDCR for at least 15 years before filing a petition. Here, defendant was not in the custody of CDCR until June 4, 2010, after his sentencing hearing. The trial court concluded section 1170(d)'s eligibility requirement that a petitioner must be "incarcerated for 15 years" was not met.

The trial court reasoned, both at the hearing and in its written order thereon, that section 1170(d)(10) provides for additional opportunities to request recall and resentencing if an initial request after 15 years was not granted, and that this subdivision refers to time "committed to the custody of the department." (§ 1170(d)(10).) Specifically, this subdivision states, "If the sentence is not recalled or the defendant is resentenced to imprisonment for [LWOP], the defendant may submit another petition for recall and resentencing to the sentencing court when the defendant has been committed to

---

[5]     The abstract of judgment incorrectly notes actual custody credits as 1,149 days. The abstract also has an erroneous "FILED" stamp date of January 31, 2011.

[6]     The People do not attempt to distinguish *Heard* or *Sorto*, nor do they contend those cases were wrongly decided.

the custody of the department for at least 20 years. If the sentence is not recalled or the defendant is resentenced to imprisonment for [LWOP] under that petition, the defendant may file another petition after having served 24 years. The final petition may be submitted, and the response to that petition shall be determined, during the 25th year of the defendant's sentence." (*Ibid.*)

Because the language in section 1170(d)(10) references time spent *committed to the custody of the department*, the court reasoned section 1170(d)(1)(A) should be interpreted consistently and concluded only custody time since June 4, 2010, when defendant was turned over to CDCR after his conviction, counts under section 1170(d)(1)(A) toward the 15 years of incarceration. Moreover, the trial court reasoned, this makes sense because defendants do not have rehabilitation programs available, nor are they incentivized to participate in them, until after they are convicted and in the custody of CDCR; thus, only time spent after conviction in the custody of CDCR counts as time "'incarcerated'" under the statute.

The trial court also concluded, alternatively, the evidence did not show by a preponderance that defendant met any of the threshold eligibility criteria under section 1170(d)(2)(A)–(D). The court found defendant's underlying crime for conspiracy to commit premeditated murder did not constitute felony murder or aiding and abetting murder under section 1170(d)(2)(A); defendant had not argued he did not have any adjudications for assault or other felony crimes with significant potential for personal harm to victims, and the court declined to find "that's a ground to grant it on." The court found that while the petition indicated at least one adult codefendant was involved, there was no evidence as to the ages of any persons who may have accompanied defendant during the crime that would establish eligibility under section 1170(d)(2)(C). Finally, although the court observed there were documents showing the programming defendant had completed toward rehabilitation, it was not sufficient under section 1170(d)(2)(D). The court found that, "although this behavior is very laudable, … it fails to prove by a

8.

preponderance of the evidence that he's performed acts that tend to indicate rehabilitation or the potential for rehabilitation."

### C.    Analysis

Relying on *People v. Ruiz* (2024) 104 Cal.App.5th 1027 (*Ruiz*), defendant argues all time spent in custody, regardless of whether it is supervised by CDCR, is time spent "incarcerated" for the purpose of section 1170(d)(1)(A).  The People do not contend *Ruiz* is distinguishable or wrongly decided; rather, they contend that even applying *Ruiz*'s interpretation of the statute, the trial court correctly concluded the petition was untimely.

According to the People, even counting defendant's time spent in juvenile hall and jail as part of the required 15-year period of incarceration, defendant still had not been incarcerated for the required 15 years at the time he filed his petition.  The People point out the probation report shows defendant was confined in juvenile hall for 19 days after his arrest (Aug. 2, 2008–Aug. 20, 2008), and he was then in jail or prison continuously from February 18, 2009, to August 23, 2023, the date his resentencing petition was filed.  The People argue this totals only 14 years, six months, and a few days.[7]

Defendant responds that the initial probation report indicates he was in juvenile hall from August 2, 2008, until August 20, **2009**, even though the report gives credit for only 19 days, and notes actual credits for jail time beginning on February 18, 2009, two days before his arraignment in adult criminal court.  Defendant argues the probation report therefore shows defendant was continuously incarcerated from August 2, 2008, until his petition was filed—i.e., 15 years 22 days.

### 1.    Calculating Incarceration Time Under Section 1170(d)(1)(A)

"'The proper interpretation of a statute is a question of law we review de novo. [Citations.]  ""As in any case involving statutory interpretation, our fundamental task

---

[7]    The People based their calculation on a petition filing date of August 28, 2023, which is not correct—defendant's petition was filed on August 23, 2023.

here is to determine the Legislature's intent so as to effectuate the law's purpose. [Citation.]  We begin by examining the statute's words, giving them a plain and commonsense meaning.'"'"  [Citation.]  "'[W]e look to "the entire substance of the statute … in order to determine the scope and purpose of the provision .…  [Citation.]" [Citation.]  That is, we construe the words in question " 'in context, keeping in mind the nature and obvious purpose of the statute .…'  [Citation.]'"  [Citation.]  "'"'"If the statutory language permits more than one reasonable interpretation, courts may consider other aids, such as the statute's purpose, legislative history, and public policy.'"'"'  [Citation.]  '"Generally, we consult extrinsic sources, like a statute's history, to interpret a statute only when its language is ambiguous."'"  (*People v. Walker* (2024) 16 Cal.5th 1024, 1032.)

In *Ruiz*, the court considered when a defendant becomes "incarcerated" within the meaning of section 1170(d)(1)(A), and concluded the term encompassed custody time spent in jail.  (*Ruiz, supra*, 104 Cal.App.5th at p. 1032.)  As the term "incarcerated" was not defined in the statute, the court looked to the plain meaning of the word from various dictionary definitions and observed it was defined as time in prison or jail.  (*Id.* at pp. 1031–1032.)  The court also noted legislative history supported this plain meaning interpretation.  Prior to January 1, 2017, the statute allowed defendants to petition for resentencing when they had "'served at least 15 years of [their] sentence.'"  (*Id.* at p. 1032, italics omitted.)  However, this language was amended by Senate Bill No. 1084 (2015–2016 Reg. Sess.) to state that a defendant could petition for resentencing after being "'incarcerated for at least 15 years.'"  (*Ruiz, supra*, at p. 1032, quoting § 1170, former subd. (d)(1)(A)(i), Stats. 2015, ch. 378, § 1.)  *Ruiz* noted a "legislative report of Senate Bill [No.] 1084 explains this revision was intended to 'clarif[y] language that has caused some confusion in the courts in the following ways:  [¶]  "Clarif[y] that the person convicted for a crime committed while under the age of 18 and sentenced to LWOP can submit a petition after he or she *has been incarcerated* at least 15 years.'"  (Sen. Public

Safety Com., 3d reading analysis of Sen. Bill No. 1084 (2015–2016 Reg. Sess.) as amended Aug. 18, 2016, p. 2, italics added.)" (*Ruiz, supra*, at p. 1032.) Based on this, the court concluded Ruiz was incarcerated for purposes of section 1170(d)(1)(A) during the time he spent in jail for the underlying offenses before his conviction. By including his time in jail, the defendant had been incarcerated for more than 15 years before filing his petition. (*Ruiz, supra*, at p. 1032.)

"We begin with the words of the statute and their usual and ordinary meaning, which would typically be their dictionary definition." (*People v. Johnson* (2022) 86 Cal.App.5th 258, 262–263, citing *People v. Gonzalez* (2008) 43 Cal.4th 1118, 1126; accord, *Hammond v. Agran* (1999) 76 Cal.App.4th 1181, 1189.) As *Ruiz* noted, the statute does not define the term "incarcerated," and we agree that, looking to various dictionary definitions, the plain meaning of the word "incarcerate" is to "confine in a prison or jail." (Ballentine's Law Dict. (3d edition 1969) p. 598, col. 2 ["incarcerate" defined as "To imprison; to confine in a prison or jail"]; Black's Law Dict. (12th ed. 2024) p. 906, col. 2 ["incarceration" is the "act or process of confining someone"]; see Merriam-Webster's Collegiate Dict. ["incarcerated" defined as "confined in a jail or prison"] <https://unabridged.merriam-webster.com/collegiate/incarcerated> [as of Mar. 19, 2025], archived at <https://perma.cc/YP7Z-PLUX>.)

Effective in 2017, the Legislature amended section 1170, former subdivision (d)(2)(A)(i), to include the word "incarcerated" in defining the 15-year period rather than the phrase "served at least 15 years of [their] sentence." Yet, with respect to subsequent petition requests that may be filed, the Legislature left in place the reference to being committed to the custody of the CDCR. Specifically, if the first petition was denied under section 1170, former subdivision (d)(2)(A)(i), former subdivision (d)(2)(H) provided that a subsequent petition could be filed "when the defendant has been committed to the custody of the [CDCR] for at least 20 years." (Stats. 2015, ch 867, § 1.) If not granted, a final petition could be filed "after having served 24 years." (*Ibid.*)

11.

Despite subsequent amendments since 2017, that distinction in phrasing remains in the current version of the statute. Had the Legislature meant to restrict the first 15-year period to time spent *in the custody of CDCR*, it would have included that language as it did for the 20-year period when it amended the statute.

Instead, the Legislature elected to use the broader term "incarcerated" whose plain meaning is to imprison in jail or prison, without regard to whether the defendant is committed to the custody of CDCR. (See *Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1117 ["Where different words or phrases are used in the same connection in different parts of a statute, it is presumed the Legislature intended a different meaning."]; *People v. Buycks* (2018) 5 Cal.5th 857, 880, quoting *Pasadena Police Officers Assn. v. City of Pasadena* (1990) 51 Cal.3d 564, 576 ["'When the Legislature "has employed a term or phrase in one place and excluded it in another, it should not be implied where excluded."'"].)

We conclude the 15-year statutory period of incarceration in section 1170(d)(1)(A) includes the time a petitioner was incarcerated in jail or prison for the charged offenses *before* being convicted and sentenced.

### 2. Petition Was Untimely

Defendant was originally arrested on August 2, 2008, and sent to juvenile hall. According to *all* the probation reports, defendant spent a total of 19 days in the county juvenile facility. However, while the first probation report gave defendant 19 days of custody credit for his time in juvenile hall, it noted he was detained in juvenile hall from "08-02-08" to "08-20-09" (more than a year), which overlaps with the time defendant was noted to be detained in the county jail. Each subsequent probation report, however, indicated defendant was detained in juvenile hall from August 2, 2008, until August 20, 2008—i.e., 19 days. Based on the original probation report, defendant contends he must have been in custody *continuously* after August 2, 2008, and moved from the juvenile

12.

facility to the county jail on February 18, 2009. Thus, when his petition was filed on August 23, 2023, he had been incarcerated for 15 years 22 days.

In his supplemental brief, defendant maintains there is a conflict in the evidence about the length of time he was in juvenile detention because (1) the original probation report shows defendant was in juvenile detention from "8-02-2008" to "8-20-2009," whereas the other probation reports indicate he was released from juvenile detention on August 20, 2008; and (2) the lack of any juvenile court records between August 2, 2008, and February 18, 2009, conflicts with all three probation reports. Relying on *People v. Lewis* (2021) 11 Cal.5th 952, 971 (*Lewis*) and *People v. Strong* (2022) 13 Cal.5th 698, 708 (*Strong*) and the standards applicable to dismissing a section 1172.6 petition at the prima facie stage, defendant contends his petition allegation that he was incarcerated for 15 years must be accepted unless the record conclusively refutes it. Given the conflict in the probation reports and the lack of juvenile court records between August 2, 2008, and February 18, 2009, defendant argues the record does not conclusively establish he was out of custody between August 20, 2008, and February 18, 2009.

In their supplemental brief, the People contend the trial court's eligibility decision is reviewed for substantial evidence. They argue *Lewis* interpreted the meaning of section 1172.6, subdivision (c), which references a "prima facie case for relief," whereas section 1170(d) contains no such prima facie stage of the proceedings. According to the People, the timeliness of the petition was a factual determination made by the trial court and reviewed under the ordinary substantial evidence standard. The People contend that, notwithstanding one typographical error in the first probation report, all three probation reports consistently show defendant was not in custody for the required period of time.

As an initial matter, we do not find any ambiguity in the record based on the initial probation report's notation that defendant was in juvenile detention from August 2, 2008, to August 20, 2009. The report gave defendant credit for only 19 days during this time period—indicating the 2009 notation was a typographical error. The supplemental

probation reports each indicate defendant was released from juvenile detention on August 20, 2008. Defendant argues the seriousness of the charges later filed in adult court belie any possibility he would have been released after his initial arrest, but nothing indicates the investigation into defendant's conduct was complete on August 2, 2008, or that the district attorney was prepared to charge defendant in August 2008 with the crimes that were eventually charged in February 2009. Moreover, defendant's short detention in juvenile hall as documented by the probation reports (and consistent with the actual custody credits defendant was awarded at each of his sentencing hearings) is consistent with the lack of juvenile court records between August 2, 2008, and February 18, 2009.

The original probation report states defendant was on probation for a juvenile adjudication in March 2008. When defendant was arrested on August 2, 2008, there was some evidence defendant had been in possession of a firearm that evening.[8] Defendant was ultimately charged with (and found guilty of) a probation violation for possessing a firearm on August 2, 2008, in violation of former section 12021, subdivision (d).

Given the absence of any juvenile records between Augus 2, 2008, and February 18, 2009, it is likely defendant's detention in juvenile hall continued while awaiting any petition or notice of probation violation to be filed by the district attorney in juvenile court (which would trigger a detention hearing). (See Welf. & Inst. Code, § 632, subd. (a); Cal. Rules of Court, rule 5.752(f).) When no petition or notice of probation violation was filed in juvenile court after his arrest on August 2, 2008, as the lack of juvenile court records indicates, defendant was released on August 20, 2008 (as indicated by both supplemental probation reports), while investigation related to the August 2,

---

[8] As noted in our original opinion, the trial evidence indicated the gun involved in the shooting was found three feet from the fence in defendant's aunt's backyard, and defendant later admitted he had been asked to hide the gun. There was also a photograph of defendant taken that night showing him holding the gun. We note this only to provide context for defendant's brief period of detention in the county juvenile facility.

14.

2008, shooting apparently continued (for which defendant was later charged in February 2009).

Irrespective of any probation reports, the trial court's December 2011 judgment awarded 1,049 days of actual custody credit. Actual presentence custody credit includes all days of custody in a county jail and residential treatment facilities, including partial days. (§ 2900.5, subd. (a); *People v. Rajanayagam* (2012) 211 Cal.App.4th 42, 48.) There is no dispute defendant was continuously in custody from February 18, 2009, through resentencing (a total of 1,030 days), which means the total calculation of 1,049 days includes *only* 19 days of custody in juvenile detention prior to trial. The parties were specifically asked about that calculation at the resentencing hearing and submitted the issue to the court on the probation report. When the court awarded 1,049 days of actual custody credit, it became part of the formal judgment of the court. Based on that award of actual custody credit, the record therefore establishes that at the time defendant filed his petition on August 23, 2023, he had been incarcerated for a total of 14 years and less than seven months.[9]

We are unpersuaded by defendant's assertion the standard for denying a section 1172.6 petition at the prima facie stage applies to the recall and resentencing process under section 1170(d). (See *Lewis, supra*, 11 Cal.5th at p. 971 ["'if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the [section 1172.6] petition," then "the court is justified in making a credibility determination adverse to the petitioner"'"]; *Strong, supra*, 13 Cal.5th at p. 708 ["If the [section 1172.6] petition and record in the case establish conclusively that the defendant is ineligible for relief, the trial court may dismiss the petition."].) But even if a petition under section 1170(d) could be denied only if the record conclusively establishes

---

**9** As it makes no difference here, we assume without deciding that being in the custody of a juvenile detention facility also constitutes being "incarcerated" within the meaning of section 1170(d)(1)(A).

15.

defendant's ineligibility, the trial court's 2011 judgment, which includes the actual custody credit calculation, conclusively establishes defendant's petition was untimely as he had not been incarcerated for a minimum of 15 years at the time he filed his petition.

In sum, even assuming juvenile detention is included for purposes of section 1170(d)(1)(A) as time spent "incarcerated," at the time he filed his petition on August 23, 2023, defendant had been incarcerated for only 14 years and less than seven months. The earliest defendant was eligible to file a petition was the end of January 2024. Thus, the trial court's ultimate finding of untimeliness was correct, even if the method of calculation was not. (*People v. Zamudio* (2008) 43 Cal.4th 327, 351 fn. 11 ["'we review the ruling, not the court's reasoning and, if the ruling was correct on any ground, we affirm'"].)

Although the trial court concluded defendant did not meet the other eligibility criteria, the petition was untimely and subject to dismissal without prejudice to refiling. The court had no jurisdiction to reach other aspects of the petition once it determined the petition was untimely, and we do not reach defendant's arguments regarding those criteria. Defendant may file a new petition if he so desires, as he has now been incarcerated more than 15 years.[10] More than a year has passed since the initial petition was filed, and defendant may have new and updated evidence of his rehabilitation efforts to support a petition for recall and resentencing. Upon refiling, defendant is entitled to present any arguments or evidence supporting his petition, including, but not limited to, those arguments defendant presented in his opening appellate brief that we did not reach.

---

[10]     The trial court noted at the hearing on the petition that defendant was eligible to refile a petition once he had been incarcerated for 15 years.

**DISPOSITION**

The trial court's order is affirmed.

MEEHAN, Acting P. J.

WE CONCUR:

DeSANTOS, J.

FAIN, J.*

---

* Judge of the Fresno Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

17.